Abraham N. Geller, J.
Defendant was convicted in the Court of General Sessions of the County of New York of burglary in the third degree in connection with the Cartier jewel robbery of June 25, 1960. During the appeal process, Mapp v. Ohio (367 U. S. 643) was decided. The Court of Appeals found no error in the record but, since the question had been raised that the admission in evidence of proof that some of the stolen diamonds were found as the product of an alleged illegal search and seizure in the pocket of a man riding with defendant in an automobile on August 30, 1960 constituted a violation of the Mapp decision, the court decided that determination of the appeal should be withheld in order that defendant might make a motion in this court to suppress this evidence, with final determination of the appeal to follow such remission (People v. Coffey, 11 N Y 2d 142). It was stated that a hearing on this sole question, rather than a complete new trial, was appropriate, since evidence obtained by a search incident to a lawful arrest was receivable and there had been presented to the appellate courts “ an affidavit by one of the F. B. I. agents containing statements which if found to be true might be the basis for holding that this search and seizure were incidental to a lawful arrest.”
After making some preliminary motions (see N. Y. L. J., May 9, 1962, p. 18, col. 2; May 29, 1962, p. 14, col. 4) defendant moved to suppress and the hearing thereon has now been held. The F. B. I. agent, above referred to, as well as the two city detectives who took part in the arrest and search have been fully examined and cross-examined. On the basis of this evidence the court denies the motion to suppress, holding that the search and seizure were incidental to a lawful arrest and therefore the proof that the stolen diamonds were found by F. B. I. agents and the city detectives as testified to at the trial was competently received.
The officers had no search or arrest warrant. Accordingly, the validity of the arrest depends on there being probable cause to make the arrest, that is, reasonable cause to believe that a felony has been committed and that the person to be arrested has committed it (Code Crim. Pro., § 177). That question is to *69 be decided by consideration of the combination of facts and circumstances within the officers’ knowledge and credible information at the time of making the arrest, since a search is not to be made legal by what it turns up.
The evidence shows that a watchman at the jewelry shop had told the police and F. B. I. that he had seen the thief as he turned and ran to an automobile, which he described as a blue and white Oldsmobile about five years old, and that the thief and the driver appeared to him to be Italians. (At the trial the watchman gave testimony identifying the defendant as the thief, but that, of course, is not to be considered on this motion.) A police teletype alarm, based apparently on a further amplification of the watchman’s first-hand description, was promptly broadcast, describing the getaway car as a 1955 hardtop Oldsmobile painted blue and white, and a detective connected with the burglary squad, who participated in the capture, testified that he had been looking for such an automobile.
The afore-mentioned F. B. I. agent testified that about two months after the theft, an informer called him and said that he had information that the Cartier burglary had been perpetrated by persons known as Coffey and Patsy who frequented the Pike Slip area of Manhattan and that, with the help of one Kingdon or Bill De Normand, they were trying to dispose of the jewels.
The agent testified further that he checked this information with F. B. I. agents whose “ beat ” was the lower East Side and was advised that these names probably referred to Joseph Coffey, the defendant, and one Pasquale Fuca, and that defendant was known to drive an automobile registered in his brother’s name, which was a 1955 blue and white Oldsmobile.
He then checked F. B. I. records concerning these three individuals. All three had criminal records; defendant and Fuca had been arrested together on prior occasions, including one for burglary and possession of burglar’s tools; and De Normand had been arrested in 1943 in a car owned by a relative of defendant.
The agent testified that he then made a luncheon appointment in a restaurant with the informer. The latter identified photographs of the three individuals as the persons referred to by him. He told the agent that the stolen rings had been cut up and that he had seen the stones. The agent asked him to describe the stones, which he proceeded to do in some detail.
To ascertain the present location of the stones, the agent induced the informer to make a telephone call. He entered the booth with the informer and listened in and overheard the entire conversation with ‘ ‘ Bill. ’ ’ He testified that the conversation *70 concerned attempts to sell the stones, the prices offered and asked, and that a further attempt would be made that night, the arrangements being that ‘ ‘ Bill ’ ’ would meet Coffey and/or Fuca about 7:00 p.m. at the Brooklyn Paramount Theatre.
Upon returning to his office the agent checked the informer’s description of the stones with that given by a Cartier official at the time of the robbery, and found that there was a substantial correspondence between them, although the official description had never been publicized. He consulted his superiors and then made arrangements for a surveillance operation, inviting the city police to participate therein. Two detectives of the city burglary squad accompanied the F. B. I. agents in this five-car surveillance. They were briefed and shown photographs of the three individuals. The city detectives also gave testimony at the hearing concerning their participation.
Defendant and De Normand with another man were observed by them at the stated time and place. They saw them enter a 1955 hardtop blue and white Oldsmobile, which defendant drove away. After they had driven around in Brooklyn and then in Manhattan, the third man left the car. When the car was later stopped at a traffic light, the F. B. I. agents and city detectives, on signal and with guns drawn, ordered defendant and De Normand to get out of the car, advising them that they were under arrest. The ensuing search disclosed an envelope in De Normand’s pocket containing stones later identified as part of the Cartier stolen rings.
They were taken to F. B. I. headquarters and there interrogated at some length. Since it appeared that there had been no interstate transportation of the gems and, therefore, no Federal crime, city officers took them to a city precinct for the night and they were arraigned the following morning in the Felony Court.
Obviously, this was a joint operation by the F. B. I. and the New York City police. Such co-operation between Federal and local law-enforcement officers is not uncommon. So long as proper legal standards of arrest and search are observed, it is immaterial that they were the product of a joint operation or which jurisdiction made the formal arrest and arraignment. Probable cause must nevertheless be established for the arrest by those participating in the operation.
It is the combination of the foregoing enumeration of facts and circumstances — several being matters related by the informer but independently confirmed and others being matters heard or observed by the officers — which gave the officers reasonable cause for believing that the stolen Cartier diamonds *71 were then in the possession of defendant or De Normand. ” Probable cause exists where 'the facts and circumstances within their [the officers’] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that ’ an offense has been or is being committed, * * * The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would he to leave law-abiding citizens at the mercy of the officers’ whim or caprice,” (Brinegar v. United States, 338 U. S. 160, 175-176.)
The defendant, arguing that probable cause depends on the reliability of the informer, requested that his identity be disclosed and that he be required to testify so that his credibility could be tested upon cross-examination. The People asserted the privilege to withhold the informer’s identity on the ground that his life might he in jeopardy.
In Roviaro v. United States (353 U. S. 53) the court said (p. 59): “ The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation,” But the court pointed ont that the privilege must give way where disclosure of the informer’s identity is relevant and helpful to the defense or is essential to a fair determination of the cause; that there was no fixed rule and that the problem was one of balancing in a particular case the public interest against the individual’s right to prepare his defense.
In Boviaro the informer’s identity was required to he disclosed, because he was the sole participant, other than the accused, in the transaction charged as the basis of the indictment. In Scher v. United States (305 U. S. 251), where the officers initially received confidential information but subsequently made certain observations before the arrest and search, the court sustained the privilege, saying (p, 254): “ The legality of the officers’ action does not depend upon the credibility of something told but upon what they saw and heard what took place in their presence.”
The rule has been applied to require disclosure where the informer participated in or was an eyewitness to the crime itself or where his communication was the only justification for the action of the police, but to withhold disclosure where there is *72 sufficient evidence apart from the initial confidential communication to establish probable cause to make the arrest (see People v. McMurray, 171 Cal. App. 2d 178).
In this case the F. B. I. agent did not proceed on the basis of the past reliability of the informer, nor did the People urge that as a ground for probable cause. The reliance was upon independently verified items of information in this matter together with several items of direct knowledge, the combination making a consistent pattern for a finding of probable cause. The informer’s ability to describe the stones; the fact that he named individuals whose interrelated past criminal records tended to lend corroboration to the information; the fact that one of these, the defendant, was known to drive a car of the description of the get-away car — these were not mere uncorroborated tips of an anonymous informer, but were reasonable factors to be taken into consideration. But, in addition, there is the direct testimony of the telephone call overheard by the agent concerning these stones and the attempt to dispose of them that evening; of the presence of defendant and De Normand at the Paramount Theatre, as stated in that conversation; and of defendant’s driving of a car at that place corresponding to the description of the get-away car given by the watchman and broadcast by the police. In view of the lapse of time since the robbery, no single item by itself would suffice to establish probable cause. But the combination and chain of circumstances lead almost irresistibly to the conclusion reached by the officers at the time they approached this car and made the arrest. It is clear that there was reasonable cause for the arrest and search apart from the informer’s communication and without relying on his credibility.
Defendant has also urged that the arrest was invalid for failure to comply with section 180 of the Code of Criminal Procedure, which requires an officer making an arrest without a warrant to inform the suspect of the cause of the arrest, except during commission of the crime or in pursuit after an escape. The circumstances indicate, however, that defendant was effectively informed within a reasonable time of the cause of the arrest.
Defendant’s further contention that delay in the arraignment made the arrest unlawful ab initio is also without foundation, since there was no unnecessary delay.
Defendant’s motion to strike out the testimony given by the two Assistant District Attorneys in corroboration of certain aspects of the testimony of the F. B. I. agent, is denied. That evidence was offered and received for a limited purpose only. It was allowed because of the nature of defendant’s cross-exami *73 nation of the agent. The court has found the testimony of the agent to be credible and supported by other relevant evidence in the case, without consideration of this collateral evidence. The motion to suppress is, accordingly, denied.