UNITED STATES of America ex rel. Joseph COFFEY, Relator,

v.

Hon. Edward M. FAY, as Warden, Green Haven Prison, Stormville, New York, Respondent.

United States District Court
S. D. New York.
Sept. 30, 1964.

Joseph Coffey, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for respondent.

WEINFELD, District Judge.

Petitioner, now serving a term of six to ten years at Green Haven Prison, Stormville, New York, pursuant to a judgment of conviction of burglary in the third degree entered in the Court of General Sessions, New York County, upon a jury verdict, seeks his release by writ of habeas corpus. Petitioner makes a two-pronged constitutional attack upon the judgment. First, he contends that evidence consisting of diamonds, the proceeds of the burglary, was obtained by the police in violation of his Federal right against unreasonable search and seizure. Second, that upon a post-trial hearing to suppress the evidence, he was denied due process of law under the Fourteenth Amendment when the Court upheld the prosecution's refusal to disclose the identity of an in-

former whose communication led to his arrest and search without a warrant.

The issues here presented arose in the wake of the Supreme Court's landmark ruling in Mapp v. Ohio.[1] In June 1960 Cartier's jewelry story in New York City was burglarized. Two months later petitioner and one De Normand were arrested and searched, and unset diamonds identified as the stolen jewelry were found on De Normand. The arresting officers had neither search warrant nor arrest warrant. At petitioner's trial, which preceded the Mapp ruling, his counsel unsuccessfully sought to exclude the diamonds from evidence on the ground they had been obtained in violation of the Fourth Amendment. The defendant was convicted and filed an appeal, during the pendency of which the Supreme Court handed down Mapp. Thereafter the New York Court of Appeals held that, although the petitioner's conviction had been entered before Mapp, his trial counsel had properly preserved for review the issue of the constitutionality of the search and seizure which had yielded the challenged evidence. The Court of Appeals withheld determination of the appeal to permit the petitioner to move to suppress the evidence.[2] He so moved and a hearing was conducted before the Trial Judge on the issue of whether the search and seizure was incident to a lawful arrest. During this post-trial hearing petitioner was refused the identity of the informer whose tip led to his arrest. The significance of the informer's identity and other information withheld from the petitioner can be evaluated only against the background of the facts as developed upon the hearing.

The principal witness called by the State to support the legality of the arrest without warrant was Henry Gilhofer, an FBI agent who dealt with the informer. He testified as follows:

About two months after the burglary he received a telephone call from an informer who told him it was common knowledge that the burglary had been committed by two men, Coffey and Patsy, who frequented the Pike Slip area in lower Manhattan, and that they and a third person, known as Kingdon or Bill De Normand, were trying to dispose of the stolen jewelry. Inquiry by Gilhofer of FBI agents familiar with the Pike Slip area revealed that the two persons named by the informant as the burglars were probably Joseph Coffey and Pasquale Fuca, and that Coffey was known to drive a blue and white 1955 Oldsmobile owned by his brother. He was also aware, since the day of the burglary, that the Cartier watchman had described the getaway car as a five-year-old blue and white Oldsmobile. Gilhofer ascertained from the FBI files that in 1943 De Normand had been arrested in a car owned by a brother or uncle of Coffey and that Fuca and Coffey had been arrested and convicted together on several occasions.

The following afternoon, August 30, 1960, Gilhofer met the informer at a restaurant where the latter identified FBI file photographs of Coffey, Fuca and De Normand as the persons to whom he had referred during the previous day's telephone talk. The informer reiterated that Coffey and Fuca were the burglars, adding that the diamonds had been removed from their settings; that the three suspects had shown him the unset stones which he described; that the stones were still in the possession of Coffey or Fuca. At Gilhofer's urging the informer agreed to try to find out where the stones were. The informer entered a phone booth with Gilhofer, held the receiver so that the latter could listen in, and dialed a number which he said was that of the Pike Slip Inn. When the call was answered the informant asked, "Is this you, Bill?" and told Gilhofer that the person who responded affirmatively was Bill De Normand. The substance of the conversation, as Gilhofer testified he overheard

---

1. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

2. People v. Coffey, 11 N.Y.2d 142, 227 N.Y.S.2d 412, 182 N.E.2d 92 (1962).

it, was that Coffey and Fuca had not yet disposed of the loot, and that a further attempt would be made to dispose of the jewels that evening at 7:00 P.M. when De Normand said he was to meet Coffey and/or Fuca at the Paramount Theatre in Brooklyn.

Gilhofer returned to FBI headquarters where he concluded the informer's description of the jewels tallied with the official unpublicized description. He decided to institute surveillance and attempt to recover the stones, but being of the view that no Federal violation appeared invited the New York City police to participate. Lieutenant Holt and Detectives Egner and Keeney of the New York police arrived about 6:00 P.M. at FBI headquarters where they were briefed by Gilhofer.

Shortly after 6:15 P.M. other FBI agents and police officers, supervised by Gilhofer, drove in four cars to the Paramount Theatre in Brooklyn. Gilhofer there saw Coffey, De Normand and one Tony Rotunda, known to him to have a criminal record. The three men entered a blue and white 1955 hardtop Oldsmobile, which left the area followed by the police cars. In Manhattan at Madison Avenue between 28th and 29th Streets Rotunda left the car. It then proceeded to Avenue C and 20th Street where it stopped for a red traffic light. Thereupon the officers and FBI agents converged upon the car, directed Coffey and De Normand to leave it, placed them under arrest and searched them. In De Normand's pocket police found an envelope containing diamonds, later identified as part of the Cartier jewels. The petitioner and De Normand were taken to FBI headquarters and there interrogated; however, since it still appeared that no Federal statute had been violated, the city police took over and the defendants were arraigned the next morning in Felony Court.

Detectives Egner and Keeney also testified upon the hearing on the motion to suppress. They swore in substance that before the arrest Gilhofer had shown them pictures of Coffey, De Normand and Fuca and told them that he had received information from an informer that they had the Cartier jewels, which the informer had accurately described. Their testimony, in general, corroborated Gilhofer's with respect to events from the start of the surveillance operation through the arrest of petitioner and De Normand. Apart from the information received from Gilhofer, Detective Egner testified that immediately following the burglary the New York City police teletype alarm had described a 1955 hardtop Oldsmobile, painted blue and white, as the getaway car.

Defense counsel, at the start of the hearing and repeatedly during the cross-examination of Gilhofer, sought to obtain, on stated constitutional grounds, the name of the informer and the place where allegedly he had been shown the unset diamonds by Coffey and his associates. Counsel urged that the information was essential to a meaningful cross-examination and an effective rebuttal. The State invoked its "informer privilege" upon the grounds that the informer, who had been paid $400 by the FBI, had been promised anonymity and that to reveal his identity would endanger his life. The refusal to disclose the place where allegedly the informer had been shown the jewels was sustained upon its contention that such information would indirectly identify the informer.

After an extensive hearing the motion to suppress was denied.[3] The Trial Judge, stressing that the State had expressly disavowed reliance upon the informer's past reliability, concluded, "there was reasonable cause for the arrest and search apart from the informer's

---

3. People v. Coffey, 36 Misc.2d 67, 232 N.Y.S.2d 545 (Sup.Ct.1962). The full record made before the Trial Judge obviates the necessity for a further hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. McGrath v. La-Vallee, 319 F.2d 308, 312 (2d Cir. 1963).

communication and without relying on his credibility."[4] In this circumstance he found that to withhold the informer's identity was not prejudicial to the defendant.[5]

The denial of the motion to suppress was affirmed by the Appellate Division[6] and by the New York Court of Appeals (Judge Fuld dissenting).[7] The Court of Appeals subsequently amended its remittitur to indicate it had considered and passed upon the constitutional issues with respect to probable cause and failure to disclose the informer's identity.[8] Certiorari was denied by the Supreme Court.[9] Then followed this petition incorporating by reference the questions raised in the petition for certiorari. Petitioner has exhausted all available state remedies.

■ This Court agrees that upon the basis of Gilhofer's testimony as to his own acts, taken in conjunction with the information he swore he received from the informer, probable cause was shown for the arrest of petitioner and De Normand. The informer's accurate description of the stolen diamonds, his statement that they had been shown to him by Coffey, De Normand and Fuca, his naming of two of them as participants in the burglary, his overheard telephone conversation concerning possible disposition of the loot, the meeting as predicted at which Coffey and De Normand were seen in a car similar to the getaway car, met the required standards for an arrest without a warrant. These, together with other items, were sufficient to justify the police officers, as reasonable and prudent men, in believing that Coffey and others had committed the burglary and were in possession of its proceeds and bent upon their disposition.[10]

But this conclusion that petitioner's Fourth Amendment rights were not violated necessarily rests upon acceptance of Gilhofer's credibility. It does not resolve the petitioner's further constitutional challenge under the Fourteenth Amendment that refusal to reveal the informer's identity deprived petitioner of the sole available evidence to rebut Gilhofer's testimony—evidence so essential on the issue of probable cause that without it he was denied a fundamentally fair hearing within the due process clause.

In Roviaro v. United States[11] the Supreme Court defined the limitations upon the informer privilege, holding that the privilege must give way if "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause * * *." The Court specifically noted it must yield "where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. * * * unless there was sufficient evidence apart from his confidential communication."

The State contends that exercise of the privilege here did not contravene these limitations and that the fundamental requirements of fairness were not violated. The essence of its position, up-

4. 36 Misc.2d at 72, 232 N.Y.S.2d at 550.

5. The Judge also found that Coffey was effectively informed within a reasonable time of the cause of his arrest, thus disposing of a further attack upon the judgment of conviction. See United States v. Robinson, 325 F.2d 391, 395 (2d Cir. 1963).

6. People v. Coffey, 18 A.D.2d 794, 236 N.Y.S.2d 1021 (1st Dep't, 1963).

7. People v. Coffey, 12 N.Y.2d 443, 240 N.Y.S.2d 721, 191 N.E.2d 263 (1963).

8. People v. Coffey, 13 N.Y.2d 726, 241 N.Y.S.2d 856, 191 N.E.2d 910 (1963).

9. Coffey v. New York, 376 U.S. 916, 84 S. Ct. 671, 11 L.Ed.2d 612 (1964).

10. See Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629 (1931); United States v. Kancso, 252 F.2d 220 (2d Cir. 1958). Cf. Rugendorf v. United States, 376 U.S. 528, 532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) (search warrant).

11. 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

held in substance by the state courts, was: (1) there was adequate verification of the informer's communication and, apart from it, independent evidence upon which to predicate probable cause for the arrest and incidental search; (2) since the informer's past reliability was not relied upon and he was neither a participant in nor a material witness to the burglary, his identity was not essential to a fair determination of the issue of probable cause; and (3) except for his identity and the place where the informer told Gilhofer he had been shown the jewelry, the petitioner had been afforded a full cross-examination of Gilhofer and other prosecution witnesses.

■ These contentions do not bear analysis. Upon a review of the entire record the Court concludes that the informer's identity was necessary to resist the State's evidence on the issue of probable cause, and that without it he was denied the only effective and available means of rebutting Gilhofer's testimony, and consequently deprived of a fundamentally fair trial.

■ The whole structure of probable cause was based upon the Trial Court's acceptance of Gilhofer's testimony that an informer, whether reliable, nonreliable or anonymous,[12] was the source of his information. Until Gilhofer allegedly received the informer's communications on August 29th and 30th, the authorities were without sufficient evidence to establish probable cause for petitioner's arrest with or without a warrant. According to Gilhofer, the informer supplied the vital information that Coffey and Fuca were the burglars; that they, together with De Normand, were trying to dispose of the loot; that they had shown him the loot; that "Bill," with whom he spoke over the telephone and who mentioned the Paramount meeting, was De Normand.

The prosecution contends, as the Trial Court found, that Gilhofer did not proceed on the informer's past reliability, but that:

"The reliance was upon independently verified items of information * * * together with several items of direct knowledge, a combination making a consistent pattern for a finding of probable cause."[13]

The "verified items of information" included the informer's description of the jewels, which corresponded to the unpublished official description; his naming of suspects, who were found to have interrelated criminal records; and the suspects' appearance at the Paramount Theatre as stated in the conversation which the informer had with "Bill." But these significant items of information which were the subject of "verification" came from the informer, according to Gilhofer. Without the information there could have been no verification. Petitioner questioned that an informer existed and, if one did, that he was the source of the information. Since the showing of probable cause was based principally upon Gilhofer's testimony, any available direct evidence to contradict him was essential, and the petitioner was entitled to present it for consideration by the trier of the fact.

■ As stated by our Court of Appeals, in holding that it was error to refuse the defense the only means of testing the fact of receipt of information from an allegedly reliable informer:

"[I]t became central to the inquiry regarding probable cause that [the arresting officer] had in fact received some information prior to the arrest from someone who was in a po-

---

12. The Court found that Gilhofer had not relied upon the informer's past trustworthiness. However, even if he had, "where information received from an informer is essential to the establishment of probable cause, his name may not be withheld from the judge or magis-

trate whose duty it is to determine whether the probable cause requirement has been met." United States v. Elgisser, 334 F.2d 103, 110 (2d Cir. 1964).

13. 36 Misc.2d at 72, 232 N.Y.S.2d at 550.

sition to know whereof he informed. The defendants were not required to take [the arresting officer's] word for this. They had the right to elicit all relevant facts so that the judge, rather than [the arresting officer] could pass upon whether probable cause existed at the time of the arrests." [14]

That the testimony of the informer was relevant on the issue of probable cause is beyond challenge—indeed, the State concedes as much.[15] It argues, however, that at best the informer's testimony would have been severely limited to an attack upon "Gilhofer's credibility as to the information he reportedly obtained from the informer." [16] In this circumstance it argues that it was not unduly prejudicial to petitioner to uphold the privilege since, apart from the informer's communication, there was sufficient independent proof to support probable cause.

As to the claim of independent or direct evidence, as distinguished from verification of information, the State seeks to come within Scher v. United States [17] and other cases,[18] where probable cause was sustained on the basis of what the arresting officers "saw and heard" apart from the informer's tip. The claim is not supported by the facts. The principal "direct testimony" relied upon and referred to by the Trial Court was (1)

the telephone conversation between the informant and "Bill" which Gilhofer swore he overheard, and (2) the fact that the rendezvous took place as predicted "in that conversation." [19] If this telephone conversation, a most vital link in the chain of probable cause, had never taken place, or if it had and the informer's version differed basically from Gilhofer's the justification for the arrest without a warrant would have been seriously impaired; moreover, in such a circumstance, the other item of "independent evidence"—that the predicted meeting referred to during the same telephone call occurred—also would have been seriously undermined.

Evidence challenging Gilhofer on his version of the telephone call certainly was relevant and was a matter of substance to be weighed by the trier of fact. As the originator of the telephone conversation the informer was a material witness thereto; but more, he was the only person in a position to deny, contradict or explain Gilhofer's testimony on this subject. De Normand was dead at the time of the hearing and even had he been alive his testimony could not have been compelled since he, too, was charged with the burglary. The State took full advantage of the overheard conversation as "direct testimony" to bolster its claim of probable cause; yet, by invoking the informer's privilege, it effectively insulat-

14. United States v. Robinson, 325 F.2d 391, 393 (2d Cir. 1963). See also, United States v. Elgisser, 334 F.2d 103, 110 (2d Cir. 1964).

15. "Thus, if the informer had been called at the hearing, it would have been relevant to inquire as to what he told Gilhofer concerning the defendant and De Normand, but not to inquire into the informer's source of information, credibility, motives or the basis for his conclusions except insofar as they were known to Gilhofer. * * *" State's brief, p. 22.

16. Id. at 23.

17. 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938), where police observed suspicious acts and elicited pre-arrest admissions from the suspect.

18. In United States v. Santiago, 327 F. 2d 573 (2d Cir. 1964), the tip merely precipitated a completely independent investigation. In United States v. Elgisser, 334 F.2d 103 (2d Cir. 1964), prior to the arrest police saw in the suspect's

possession property described by an FBI report as stolen.

19. The fact that the meeting took place as predicted during the telephone talk has been held in this and other circuits not to constitute independent evidence apart from the informer's tip. United States v. Robinson, 325 F.2d 391 (2d Cir. 1963), Costello v. United States, 298 F.2d 99 (9th Cir. 1962). Contra, Jones v. United States, 326 F.2d 124 (9th Cir. 1963), Jones v. United States, 106 U.S.App.D.C. 228, 271 F.2d 494 (1959). A third item of "direct testimony," and the only one unrelated to the information allegedly received from the informer, was the similarity between the car driven by petitioner at the time of his arrest and that described two months earlier by the Cartier watchman. It is clear, however, that such a coincidence in a city the size of New York would not, standing by itself, be enough to establish probable cause to arrest the car's occupants.

ed this crucial testimony from rebuttal or contradiction. The State having introduced evidence in its direct case of a telephone call relevant to the principal issue, fundamental fairness required that the informer, a party to that conversation, be revealed, or else that Gilhofer's testimony be stricken.[20] Neither was done.

In People v. McShann[21] the Court said that when the State introduced evidence of a telephone call by the informer he became a material witness, and in Justice Traynor's words:

"The prosecution could have relied solely on the testimony of the officers as to defendant's possession of heroin and as to his admissions without reference to the telephone call. They chose instead also to introduce evidence of the telephone call, which substantiated the testimony of Officers Goodrum and Reppas and discredited defendant's. Defendant denied receiving the call. He had no fair opportunity to substantiate his denial and impeach the testimony of the officers without disclosure of the informer's identity. Had there been disclosure, the informer might have testified that no such telephone call was made, that it was not defendant who received the call, that someone else was called, or that there was an entrapment. * * * Although the informer in the present case was not an eye witness to the crime, * * * the prosecution's own election to introduce evidence of the telephone conversation made it imperative that it

disclose the identity of the informer, for he alone could amplify or contradict the testimony of the officers. As in the Roviaro case nondisclosure was prejudicial error." [22]

It is abundantly clear here that both the "direct testimony" and the independently "verified items of information" relied upon to sustain probable cause are so interlaced with and dependent upon the informer's communication to Gilhofer that they cannot be separated one from the other—indeed, as the Trial Court commented: "No single item by itself would suffice to establish probable cause." The importance of every item relied upon to sustain the ultimate finding of probable cause emphasizes the need to afford to petitioner all available evidence to challenge the reliability and accuracy of Gilhofer's testimony. The asserted privilege denied him the principal source of such evidence.

The State defends withholding the informer's identity upon the further contention that disclosure is required only where the informer's trustworthiness was relied upon by the arresting officers or where he was a participant in or a material witness to the crime itself. This contention cannot be squared either with the cases which hold that disclosure may be compelled whenever an informer's testimony is essential to a fair determination of a cause,[23] or with the principle, so tersely stated by Chief Judge Learned Hand:

"It is * * * one thing to allow the privileged person to suppress the evidence, and * * * another thing to allow him to fill a gap in

---

20. Cf. People v. Ramistella, 306 N.Y. 379, 118 N.E.2d 566 (1954).

21. 50 Cal.2d 802, 330 P.2d 33 (1958).

22. 330 P.2d at 38.

23. In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623 (1957), the informer was the only witness to the alleged crime, but the Court's statement of the circumstances requiring disclosure went beyond those facts. Said the Court: "Where the disclosure of an informer's identity, or of the contents of his communication,

is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. 353 U.S., at 61, 77 S.Ct. at 628. In United States v. Robinson, 325 F.2d 391 (2d Cir. 1963), the asserted basis for crediting the informer's tip was his past reliability, but again the rule stated encompassed all cases "where it is essential to the proper determination of the validity of an arrest." Id. at 394.

his own evidence by recourse to what he suppresses." [24]

While it is true the State disavowed reliance upon the informer, it is equally true, as already shown, that the finding of probable cause was grounded in substantial measure upon Gilhofer's credibility and the verification of the informer's communication, as testified to by him. As Justice Traynor said in Priestly v. Superior Court: [25]

"If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore be permitted to ascertain the identity of the informer, since the legality of the officer's action depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined. * * * When the prosecution relies instead on communications from an informer to show reasonable cause and has itself elicited testimony as to those communications on direct examination, it is essential to a fair trial that the defendant have the right to cross-examine as to the source of those communications."

 Finally, the State argues that since petitioner had ample opportunity to cross-examine Gilhofer and other prosecution witnesses—except as to the informer's identity and the place where he said he had been shown the jewels—

he was not deprived of a fundamentally fair hearing, especially since there was only a theoretical possibility that disclosure might in some way aid the defense. This suggests that petitioner was required to show that the proposed counterevidence of the informer would negative Gilhofer's testimony. He was not required to do so, although his counsel at the hearing projected various areas of proposed questioning of the informer to establish that his testimony was essential. The right to cross-examine is fundamental under our judicial system, and to deprive an accused of a cross-examination of a witness who has already testified on material matters in issue, is to deny the accused a substantial right; moreover, "[t]he desirability of calling [the informer] as a witness, or at least interviewing him in preparation for trial, [is] a matter for the accused rather than the Government to decide." [26]

In Alford v. United States [27] the Supreme Court held:

"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. * * * To say that prejudice can be established only by showing that the cross-ex-

24. United States v. Coplon, 185 F.2d 629, 638, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). Accord, United States v. Keown, 19 F.Supp. 639 (W.D. Ky.1937); People v. Ramistella, 306 N.Y. 379, 118 N.E.2d 566 (1954).

25. 50 Cal.2d 812, 819, 330 P.2d 39, 43 (1958).

26. Roviaro v. United States, 353 U.S. 53, 64, 77 S.Ct. 623 (1957).

27. 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). See also, People v. Ramistella, 306 N.Y. 379, 118 N.E.2d 566

(1954), where the prosecution was not permitted to introduce evidence of a secret auto registration number so long as they refused to disclose its location to the defendant. In United States v. Coplon, 185 F.2d 629 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362 (1952), the Court held that it violated defendant's right to a fair hearing to permit the prosecution to establish that wiretaps had not been the source of challenged evidence by showing the logs of those taps to the judge, but not to the defendant.

amination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial."

In the instant case the exercise of the privilege not only precluded cross-examination of Gilhofer on material matters as to which he had testified on direct examination, but prevented petitioner from preparing an adequate defense and rebuttal. A restricted cross-examination is no substitute for independent countervailing evidence.

The prejudice resulting from nondisclosure of the informer's identity was aggravated rather than ameliorated by a circumstance relied upon by the State to support its position. The State, to establish that there was an informer, offered the testimony of two Assistant District Attorneys. One, who had prosecuted both Coffey and De Normand, testified that during Coffey's trial Gilhofer told him the informer's name and subsequently at De Normand's trial introduced him to the informer, with whom he conferred. According to this Assistant, the informer in Gilhofer's presence verified that he had given the information to Gilhofer but refused to testify at the De Normand trial for fear of his life. The other Assistant, who, after petitioner's conviction and while his appeal was pending in the Appellate Division, interviewed Gilhofer for the purpose of preparing his affidavit as to events leading to the arrest, gave his version of what Gilhofer told him of the informer's communications.[28] The testimony of the two Assistants was received by the Trial Judge "for the limited purpose bearing on the question of whether this informant was a phantom informer, conjured up by the F.B.I. agent who testified."[29] Although the Trial Judge disavowed reliance upon this "collateral evidence" to support Gilhofer's credibility,[30] the majority of the New York Court of Appeals accepted this testimony as full corroboration of Gilhofer. In concluding that disclosure was not essential to a fair hearing, it said:

"We are left in the dark as to who this informer was but the fact of his existence and. of his informing was fully testified to, fully corroborated by the prosecuting attorneys and found by the courts below."[31]

With all due deference to the Court of Appeals, it assumed the existence of material matters in issue in reliance upon one prosecutor's account of his ex parte talk with an unnamed person and another's version of his interview with Gilhofer, despite the sharp limitation upon petitioner's right to cross-examine and offer rebuttal evidence. In end result the determination of the issue of probable cause was left not only with the arresting officer, but with those prosecuting the charges. As Chief Judge Lumbard wrote in United States v. Robinson:[32]

"Such decisions should not be left in the hands of law enforcement officers who may later be called upon to justify their action; they may safely be left only in the hands of some impartial judge or magistrate."

Upon all the circumstances disclosed by this record, the conclusion is compelled that the privilege exercised by the State in withholding the identity of the informer deprived the petitioner of his constitutional right to a fair hearing on the issue of probable cause.[33] This Court

28. Transcript, pp. 293–307.

29. Transcript, p. 382.

30. 36 Misc.2d at 72–73, 232 N.Y.S.2d at 551.

31. 12 N.Y.2d at 452, 240 N.Y.S.2d at 726, 191 N.E.2d at 267.

32. 325 F.2d 391, 393 (2d Cir. 1963).

33. Some courts would relax the rules of fairness applicable to adversary proceedings when the issue is probable cause to arrest rather than ultimate guilt. People v. Durr, 28 Ill.2d 308, 192 N.E. 2d 379 (1963) (Schaefer, J., dissenting); State v. Burnett, 42 N.J. 377,

agrees with Judge Fuld in his dissent in this case that:

"* * * a showing of probable cause necessarily depended in part upon the information furnished by the unknown informer. The law enforcement officials, it is true, testified that they 'checked' the story given by the informer—and we have no reason to disbelieve them—but the fact remains that the conclusion that the informer actually existed and that he gave the information ascribed to him depended solely upon their own testimony. Accordingly, since the defendant had no effective way of contradicting or impeaching this testimony without knowledge of the informer's identity, disclosure should have been required. It may well be that the proof of the defendant's guilt is clear but that does not decide this appeal, for, as the court emphasized in the Roviaro case (353 U.S. 53, 60, 77 S.Ct. 623, supra), 'fundamental requirements of fairness' are involved."[34]

The matter is remanded to the State Court to afford the State an opportunity to conduct a further hearing on the issue of probable cause consistent with this opinion, or, in the alternative, to grant petitioner a new trial at which it shall not offer in evidence the jewels obtained as a result of the arrest without a warrant of petitioner and De Normand. In the event of failure to grant petitioner the above relief within thirty (30) days from the date hereof, the writ is sustained and the petitioner ordered discharged from custody.[35]

Submit proposed order in accordance with the foregoing and also to contain a provision staying the execution of the order to be entered for a period of five (5) days to enable the State to apply for a stay to the Court of Appeals in the event it decides to appeal.

201 A.2d 39 (1964). This view too narrowly construes Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623 (1957), and allows the fruits of an allegedly invalid search to affect the determination of its legality. Both the New York courts in the instant case and our Court of Appeals have rejected such a position. See United States v. Elgisser, 334 F.2d 103 (2d Cir. 1964), United States v. Rosario, 327 F.2d 561 (2d Cir. 1964), United States v. Robinson, 325 F.2d 391 (2d Cir. 1963).

34. 12 N.Y.2d at 455, 240 N.Y.S.2d at 729, 191 N.E.2d at 269.

35. Cf. Jackson v. Denno, 378 U.S. 368, 393–396, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).