**UNITED STATES of America ex rel. Joseph COFFEY, Relator,**

v.

**Hon. Edward M. FAY, as Warden, Green Haven Prison, Stormville, New York, Respondent.**

United States District Court
S. D. New York.

June 16, 1965.

---

Alfred I. Rosner, Martin B. Rosner, New York City, for relator.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent, Joel Lewittes, Asst. Atty. Gen., Michael H. Rauch, Deputy Asst. Atty. Gen., of counsel.

WEINFELD, District Judge.

On his application for a Federal writ of habeas corpus, this Court held that petitioner had been denied fundamental fairness when the prosecution was permitted by the state court to withhold the identity of an informant, admittedly not of previous known reliability. The informant allegedly had furnished an FBI agent, Gilhofer, with information and also had permitted the agent to overhear a telephone conversation between him (the informant) and a third person, which constituted the main prop of the

state's claim of probable cause for petitioner's arrest without a warrant and for an incidental search. Our Court of Appeals reversed, holding that due process does not require the rule of Roviaro v. United States [1] be applied in a state court hearing to determine probable cause as distinguished from a trial upon the merits.[2] The case was "remanded to the district court for consideration of the other federal questions raised by petitioner."

None of these claims, which arose out of the circumstances immediately surrounding petitioner's arrest,[3] entitles him to Federal habeas corpus relief.

■ First, there is his claim that even if Gilhofer did have probable cause to believe him implicated in the Cartier burglary or possessed of its proceeds, the New York City detectives participating in the arrest did not, for Gilhofer omitted to tell them of the overheard telephone conversation between the informant and the man identified by the informant as DeNormand, which conversation formed an essential link in the chain of probable cause.[4] Assuming arguendo that the legality of the arrest turns on whether the New York detectives, independently of Gilhofer, had probable cause, the record supports a finding they did. And even assuming, as petitioner contends, that Gilhofer did not discuss the overheard telephone conversation with them,[5] the issue is not whether the

---

1. 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L. Ed.2d 639 (1957), where the Court said: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of nondisclosure] must give way. * * * Most of the federal cases involving this limitation * * * have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause." Where disclosure is required, the Court noted that the informer's identity should be revealed in response to a request for a pretrial bill of particulars. Id. at 65 n. 15, 77 S.Ct. 623.

2. United States ex rel. Coffey v. Fay, 344 F.2d 625 (2d Cir. 1965).

3. The facts are set out in this Court's opinion at 234 F.Supp. 543, and will not be repeated here.

4. See 234 F.Supp. at 550.

5. In recounting what Gilhofer had told them, Detectives Egner and Keeney made no mention of the telephone call, although it does not appear they were specifically questioned about it. However, their superior, Lieutenant Holt, was also briefed by Gilhofer, who testified that he "advised [his forces] of the information that I had." The record permits a finding that the telephone call information was imparted to the New York City police. The circumstance that when the task force

detectives knew precisely everything that Gilhofer knew, but rather whether they—under all the circumstances, taking into account their prior knowledge of pertinent facts relating to the burglary—had reason to believe the suspects had committed it or were committing a crime by possession of its proceeds. If Gilhofer failed to mention the telephone conversation to any city detective, and the Court believes the contrary is true, he did tell Detectives Egner and Keeney that he had "very reliable information" which would solve the Cartier burglary, that his informant had seen the stolen jewels—which he was able to describe with accuracy—in the suspect's possession, and that the suspects were to meet in Brooklyn that night to dispose of the jewels. If the detectives were not told all of the reasons why Gilhofer believed his information "very reliable," they were told many of them. Moreover, they were entitled to attach considerable weight to the conclusion by an experienced FBI agent that his information was credible.[6] Finally, Gilhofer's confidence in the reliability of his informant was corroborated just before the arrest by the arrival of the suspects at the appointed time and place and by their use of a car exactly like the getaway vehicle.[7] In all the circumstances, even on the assumption that no New York City detective had been told of the telephone call, Detectives Egner and Keeney had prob-

able cause to arrest petitioner and to conduct an incidental search.

■ In light of the Court's finding that both Federal and state law enforcement officers had probable cause to believe petitioner had committed or was committing a crime, little need be said of petitioner's second contention: that his Federal rights were violated when he was arrested by FBI agents acting without statutory authority[8] and of necessity using local policemen as a shield for their own "misconduct." At the time of the arrest, which was a cooperative effort of Federal and state authorities, it was not definitely known whether the suspects had or had not committed a Federal crime in addition to the burglary. When it appeared that no basis for Federal action existed, the New York police took over and arraigned petitioner in Felony Court. Whether participation in the arrest by Federal agents, or its tactical direction by an FBI agent, stripped Detectives Egner and Keeney (or Lieutenant Holt) of their authority to act is a question of state, and not Federal, law. This is not to say that Federal agents may misconduct themselves, using the fruits of that misconduct to convict their victim on state charges.[9] But this is not such a case. There is no showing here that the Federal agents were trying to "accomplish illegal results by boosting Oliver Twists through windows built too narrow * * * for their own ingress."[10]

---

left FBI headquarters to make the arrest, Holt was sent to establish surveillance in the Pike Slip area rather than at the Paramount Theater, does not render irrelevant the information given him. There is, after all, no requirement that every single policeman participating in an operation himself have probable cause to act.

6. See Conti v. Morgenthau, 232 F.Supp. 1004, 1006–1007 (S.D.N.Y.1964).

7. While these circumstances would have been insufficient, standing by themselves, to justify an arrest, see 234 F.Supp. at 549, n. 19, they were of some value in corroborating Gilhofer in the eyes of the detectives, see Draper v. United States,

358 U.S. 307, 312–313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

8. There is no express Federal authorization for FBI agents to make arrests on nonfederal charges. See 18 U.S.C. § 3052. And New York law does not confer such authority on them. See N.Y. Code Crim.P. §§ 154, 960.

9. Compare Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). See Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963).

10. Cleary v. Bolger, supra, at 407, 83 S. Ct. at 393 (Douglas, J., dissenting).

Little remains, too, of petitioner's third claim: that his Federal rights were violated when, immediately following the arrest, his car was driven to FBI headquarters where it was identified by the Cartier watchman, photographed and measured. Participation in these actions by Federal personnel and the use of FBI headquarters as a temporary site for the car were not improper, there being no prohibition against this kind of Federal-state cooperation.

Nor is there merit in petitioner's final contention: that he was denied a Federal right when, in disregard of Section 180 of New York's Code of Criminal Procedure, he was not immediately informed of the reason for his arrest.[11] What constitutes compliance with the statute is a matter of state, not Federal, law and in this instance the issue has been resolved against petitioner by the New York courts.[12] Moreover, the statutory requirement does not apply when the person arrested "is in the actual commission of a crime." Here, the arresting officers, Federal and state, had probable cause to believe the suspects were in possession of the proceeds of a burglary, itself a crime. In any event, noncompliance with a state rule is not, in and of itself, a violation of one's federally protected rights. Petitioner has not persuaded the Court that he had a Federal constitutional right to be told the reason for his arrest at the time it was effected, nor a Federal statutory one where Federal agents did not force their way into his home.[13] Petitioner's reliance on United States v. Di Re [14] is misplaced, for the Supreme Court was there reviewing a Federal criminal prosecution in which the validity of an arrest without a warrant was governed by state and not Federal standards. Here, the issue must be seen through the filter of the Fourteenth Amendment.

Accordingly, on the basis of the Court of Appeals' ruling that Gilhofer's testimony is to be accepted without disclosure of the informant's identity, petitioner's application for habeas corpus is denied. A certificate of probable cause may issue.

---

11. The statute provides: "When arresting a person without a warrant the officer must inform him of the authority of the officer and the cause of the arrest, except when the person arrested is in the actual commission of a crime, or is pursued immediately after an escape."

12. See People v. Coffey, 36 Misc.2d 67, 72, 232 N.Y.S.2d 545, 550 (Sup.Ct.1962), aff'd, 12 N.Y.2d 443, 453, 240 N.Y.S.2d 721, 727–728, 191 N.E.2d 263 (1963).

13. See Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); 18 U.S.C. § 3109.

14. 332 U.S. 581, 588, 68 S.Ct. 222, 92 L. Ed. 210 (1948).