**UNITED STATES of America ex rel. Joseph D. COFFEY, Petitioner,**

v.

**Harold M. FOLLETTE, Warden, Green Haven Prison, Respondent.**

**No. 69 Civ. 1671.**

United States District Court,
S. D. New York.

June 19, 1969.

Joseph D. Coffey, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of N.Y., for respondent.

## MEMORANDUM

FRANKEL, District Judge.

On December 9, 1960, petitioner was sentenced as a second offender to a term of not less than six nor more than ten years on a third degree burglary charge. On direct appeal, the Appellate Division affirmed, 13 A.D.2d 410, 217 N.Y.S.2d 176 (1st Dep't 1961), and the Court of Appeals withheld determination of the appeal while petitioner was permitted to assert a claim under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), in a post-trial hearing on a motion to suppress, People v. Coffey, 11 N.Y.2d 142, 227 N.Y.S.2d 412, 182 N.E. 2d 92 (1962). That motion to suppress was denied, 36 Misc.2d 67, 232 N.Y.S.2d 545 (Sup.Ct. 1962); and the denial was affirmed by the Appellate Division, 18 A.D.2d 794, 236 N.Y.S.2d 1021 (1st Dep't 1963), and the Court of Appeals, 12 N.Y.2d 443, 240 N.Y.S.2d 721, 191 N.E.2d 263 (1963). The Supreme Court denied certiorari, Coffey v. New York, 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964).

Then, petitioner applied to this court for habeas corpus. In United States ex rel. Coffey v. Fay, 234 F.Supp. 543 (S.D.N.Y. 1964), Judge Weinfeld sustained petitioner's claim that he had been denied a fair trial on the issue of probable cause for arrest by the State's refusal to disclose the identity of an informer. That conclusion was reversed, 344 F.2d 625 (2d Cir. 1965), and the case was remanded for consideration of the other issues raised in the petition. These remaining claims—(a) whether the New York police in fact had probable cause to arrest, (b) whether cooperative efforts of federal and state authorities rendered the arrest invalid, and (c) whether the arresting officers complied with New York Code of Criminal Procedure § 180 (notification of arrest)—were rejected, 242 F.Supp. 382 (S.D.N.Y. 1965), aff'd, 356 F.2d 460 (2d Cir. 1966).

Petitioner has now filed a second habeas petition. This one alleges a violation of the privilege against self-incrimination because of the testimony of a New York City detective at petitioner's trial that at police headquarters he said, "I am not going to answer any question." The error thus asserted is said to have been compounded by the trial court's refusal to charge suitably on the right of silence. The court concludes that the petition cannot be sustained.

■ 1. Respondent first urges that the petition should be dismissed because it "constitutes an abuse of the writ." While the contention is not without substance, it is not accepted as a basis for denial of the petition. It is not disputed that this application "alleges and is predicated on a * * * ground not adjudicated on the hearing of the earlier application * * *." 28 U.S.C. § 2244(b) (Supp. IV, 1969). The State has made no showing that the petitioner "on the earlier application *deliberately* withheld the newly asserted ground * * *." *Id.* (emphasis added). There is no indication that at a monstrous cost of long years in prison the petitioner

has "abused the writ" by postponing the issues now posed.

■ 2. On its merits, however, petitioner's claim must be rejected. The error or errors of which he complains do not amount to a denial of due process.

Detective Egner, a police officer for eighteen years and a detective for ten, was one of the officers who took petitioner into custody. He testified that in the car on the way to FBI headquarters, he questioned petitioner as to his name, his address, and his brother's ownership of the vehicle in which he was driving when arrested (Tr. 1043). From FBI headquarters petitioner was taken to the police station, where he participated in a lineup. Sometime later in the afternoon, Detective Egner questioned him again and received, *inter alia*, the answer now complained of. At the trial, Egner testified as follows and without objection, on direct (Tr. 1051–52):

"Q   What questions did you put to him and what answers did he make to those questions?

"A   I asked him where he had been that evening.

"Q   What answer did he make to that question?

"A   He said that he just came down from Harlem and that this fellow DeNormand had asked him to give him a lift up to 116th Street and that they were returning downtown 'when you fellows grabbed us.'

"Q   What was the next question you put to him after that?

"A   I then asked him, 'What about the trip in Brooklyn?' He said, 'What do you mean Brooklyn? I wasn't in Brooklyn.' I then said to him, 'I saw you in Brooklyn. I have been following you for the best part of an hour, tailing you. You haven't been in Brooklyn?' He said 'Not me; I was never in Brooklyn. I didn't come from Brooklyn. I was in Harlem and I just came down the East River Drive.'

"Q What was the next question you put to him?

"A I said to him, 'What about this fellow you were with, DeNormand? What about the stuff he had in his pocket?'

"MR. ROSNER: What did you say?

"THE COURT: Read the question and the answer, Mr. Frank.

"(The stenographer reads the record.)

"A (continued) And his answer was, 'I wasn't in Brooklyn. I don't know what you are talking about. I am not going to answer any question.'

"Q Is this the sum total of the entire conversation?

"A Yes."

On cross-examination defense counsel again brought out the words of the petitioner now objected to (Tr. 1057–58):

"Q And you asked him, 'What do you know about that packet of diamonds that DeNormand has'? And he answered, 'I don't know anything about it. And I refuse to answer any of your questions,' Is that correct, sir?

"MR. ROBERTS: I object to the form of the question, your Honor. I have no objection to him asking him what was said about it and what the answer was; but in that form I object to it.

"THE COURT: Reframe it.

"MR. ROSNER: All right.

"Q Did you ask him what he knew about the packet that DeNormand had in his possession—a packet of diamonds? And he answered, in substance, did he not, 'I know nothing about it, and I refuse to answer any of your questions'?

"MR. ROBERTS: Now, your Honor, I object.

"THE COURT: I will overrule the objection. Let the witness answer.
\* \* \*

"A He said, 'I don't know what you're talking about. I'm not going to answer your questions.' "

At this point (Tr. 1059) the defense counsel requested the court

"to charge the jury at this time that it was Coffey's legal right to refuse, while in police custody, to answer questions of the police, and the jury may draw no inference from his refusal to answer such questions.

"THE COURT: The jury is so instructed. That is every citizen's right."

When it came time for requests to charge, the defense requested the trial judge to charge

"that the general rule is firmly established that a person in custody, accused of a crime, has no duty to speak and that evidence may not be introduced to show that the defendant refused to answer questions by prosecuting officials or police."

The court said this request was "granted in part in language covered in charge." (Tr. 1541). An examination of the charge itself, however, reveals that the judge charged on the defendant's right not to testify as a witness in his own behalf (Tr. 1455), but failed to charge on the right to silence. But there was a general admonition that "any instructions \* \* \* I charged you on during the course of the trial should be implicitly followed \* \* \*" (Tr. 1461).

In his summation, defense counsel stated: (Tr. 1303):

"They didn't tell him that there was any charge against him but they asked him, 'What do you know about the diamonds that were found on DeNormand?' and he said, 'I don't know anything about that' or words to that effect and 'I don't care to answer any of your questions,' which is his privilege. Why should he answer any of their questions when they didn't want to tell him what the charge was against him?"

On this record, there is much to be said for holding that there was a waiver of any supposed error in the brief item of testimony petitioner now assails. Defense counsel himself emphasized petitioner's words on cross-examination, and again in summation. In view of the petitioner's alibi defense at the trial, his words at the police station—"I don't know what you are talking about. I am not going to answer any question"—may have been seen by defense counsel as a spontaneous outburst buttressing the claim that petitioner was ignorant of the allegations in the indictment.

But whether or not there may have been at least a partial waiver, petitioner's claims must be rejected on their merits. The principles he seeks to invoke are those of Supreme Court decisions long after his conviction and inapplicable to his case. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), declared nonretrospective in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L. Ed.2d 453 (1966); and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held applicable "only to cases commenced after those decisions were announced" in Johnson v. New Jersey, 384 U.S. 719, 733, 86 S.Ct. 1772, 1781, 16 L.Ed.2d 882 (1966). The petitioner's reliance on Gillison v. United States, 130 U.S.App.D.C. 215, 399 F.2d 586 (1968) is likewise misplaced. That case was governed by Griffin v. California; it involved a line of questioning and comment by the prosecutor far more prejudicial than what occurred in petitioner's trial,* and the trial court

there had refused to instruct the jury to disregard the remark.

It would be better if the court in its final charge had repeated the point about the defendant's right to silence in the police station. It appears that the trial judge may have been mistaken about what his charge included on this score, or that he described inaptly his simultaneous instruction at the time the evidence in question was received. In either event, for reasons already reviewed, the charge on the spot, and the reference back to it in the final instructions, would appear to have been adequate. At the very least, the possible imperfection cannot be said to approach due process proportions.

The petition is denied. So ordered.

---

\* "Q. Now, if you had nothing to do with it, * * * when they apprehended you, why didn't you tell them, 'Look, I didn't do it.'?
"A. They wouldn't listen. When they approached me, he wouldn't listen. He just jumped right on me.
"Q. Didn't you try to tell them?
"A. Yes, sir.
"Q. As a matter of fact, you wouldn't make any statement?

"A. No, I didn't.
"Q. As a matter of fact, you didn't?
"A. No.
"Q. You didn't want to make any statement when you were asked by the police?
"A. I didn't want to make any statement without the presence of the attorney.
"Q. And that's the action of an innocent man who went looking for a job."