**UNITED STATES of America,**
**Appellee,**

v.

**George ROBINSON and Annita Daniels,**
**Defendants.**

**No. 74, Docket 28090.**

United States Court of Appeals
Second Circuit.

Argued Oct. 25, 1963.

Decided Dec. 18, 1963.

**392**

Edmund F. Maxwell, Asst. U. S. Atty., Buffalo, N. Y. (John T. Curtin, U. S. Atty., Buffalo, N. Y., on the brief), for appellee.

Samuel S. Sansone, Lockport, N. Y., for defendants.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

This appeal turns on whether the Buffalo police officers who arrested George Robinson and Annita Daniels without a warrant on September 17, 1962 and later found heroin on Daniels had probable cause for their arrests and whether the arrests were executed in accordance with law. As we find that defense counsel should have been permitted to examine federal narcotic agent Giovino regarding the "special employee" who informed him that Robinson and Daniels were on their way home with narcotics purchased in New York, we vacate the judgment and remand for further hearing of the motion to suppress.

The facts relevant to the arrest were developed before trial at the hearing on the motion to suppress and are undisputed.

The information which led to the arrest of the defendants first came to federal agent Salvatore J. Giovino in a telephone call which he received about 9:30 A.M. on September 17, 1962 from a "special employee of the government" who informed him that the defendants would be arriving that day from New York with narcotics but that he did not know how they would be travelling. Giovino then telephoned this information to Dean J. Gavin, a detective sergeant in the Buffalo police department, who immediately relayed the substance of this information by telephone to Officer Edward J. Clohessy of the Narcotic Squad who was in a police car with Officer Pat Quale. Gavin told Clohessy that the defendants were expected to return to Buffalo that morning with narcotics and directed the officers to apprehend the defendants in the area of their home at 53 Kingsley Street.

At about 10:40 A.M. Clohessy and Quale saw Robinson and Daniels walking on Michigan Avenue toward their home which was three and a half blocks away. Robinson was carrying a large suitcase and Daniels had a small suitcase and a shopping bag. Daniels knew Quale as an officer of the Narcotic Squad as he had been to her home "a couple of times." Both Quale and Clohessy testified they knew Daniels to be an addict. Quale also knew of Robinson's previous conviction for possession and sale of narcotics.

When Quale asked what they were doing with the suitcases the defendants said they had come from New York and had just gotten off the bus from Rochester at Michigan and Main Streets. Quale told them to get in the police car, that they were going downtown. Neither officer told Robinson or Daniels why they were being placed under arrest. Daniels thereupon asked Quale to search her in the car. The defendants said they were "clean," and had not brought anything back from New York City. It was testified that "clean" meant they had no narcotics with them. The suggestion to search Daniels then and there was refused and the defendants were driven to police headquarters. Daniels had secreted in her bosom a package containing 91 glassine envelopes of heroin which was forcibly taken from her when she refused to permit a policewoman to search her. Robinson's suitcase contained measuring spoons, a roll of scotch tape and glassine envelopes of the same kind as those found on Annita Daniels.

Narcotic Agent Giovino was called as a witness by the defendants. After stating that he had received the information about Robinson and Daniels coming in that day with narcotics from New York, Giovino testified that this was "confidential information" received from a "special employee of the Government" who at some later time had been paid by the government. Defense counsel then asked the witness to state the man's name, the United States Attorney objected, the court sustained the objection and counsel took exception. Clearly it was error to cut off the examination at that point and refuse to the defense the only means of testing the fact of receipt of such information, the means of the informant's knowledge and the reasons why Giovino considered it to be reliable.

Without the information that Robinson and Daniels were coming back from New York with narcotics there would have been no probable cause for Quale and Clohessy to believe, when they saw Robinson and Daniels carrying suitcases toward their home, that they were transporting narcotics. Thus it became central to the inquiry regarding probable cause that Giovino had in fact received some information prior to the arrests from someone who was in a position to know whereof he informed. The defendants were not required to take Giovino's word for this. They had the right to elicit all relevant facts so that the judge, rather than Giovino, could pass upon whether probable cause existed at the time of the arrests. To hold that the agent was not subject to further examination on the crucial facts regarding the informant would completely emasculate the requirement of probable cause where officers of the law act without a warrant. Such decisions should not be left in the hands of law enforcement officers who may later be called upon to justify their action; they may safely be left only in the hands of some impartial judge or magistrate.

As there was not sufficient evidence apart from the special agent's information on September 17 to justify arrest, the identity of the informant must be disclosed. In Roviaro v. United States, 353 U.S. 53, at 61, 77 S.Ct. 623, at 628, 1 L.Ed.2d 639 (1957), the Court said:

> "Most of the federal cases involving * * * [the limitation on the applicability of the informer's privilege which arises from the fundamental requirements of fairness] have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication."

Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), is clearly distinguishable on its facts. There the Supreme Court upheld an arrest without a warrant under very similar circumstances. The "special employee" had advised the narcotic agent that the defendant would be arriving by train and that he would be carrying

narcotics. However, in Draper the identity of the informer was disclosed.[1] It also appeared that he had given "accurate and reliable" information on previous occasions. 358 U.S. at 313, 79 S.Ct. at 333.

We also find the situation in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), to be distinguishable as there the Commissioner issued a search warrant and he was in the position of requiring the production of further information including disclosure of the informant if he thought it necessary. Moreover, the information had been corroborated by other independent evidence. Here we have no supervision by any impartial judicial authority prior to the arrest.

■ Other cases which support the requirement of disclosure in cases such as that before us are Costello v. United States, 298 F.2d 99 (9 Cir. 1962); Wrightson v. United States, 95 U.S.App. D.C. 390, 222 F.2d 556 (1955); Contee v. United States, 94 U.S.App.D.C. 297, 215 F.2d 324 (D.C. Cir. 1954); Wilson v. United States, 59 F.2d 390 (3 Cir. 1932). Usually the government is able to secure additional corroborating information so that the arrest may be supported by that other evidence, and in such cases, of course, the arrest should be sustained without requiring the disclosure of the informant. However, where it is essential to the proper determination of the validity of an arrest the government must either disclose or run the risk of having the arrest held invalid.

■■ Whether the arrest was legal must be determined according to the law of New York. United States v. Di Re,

332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Section 177, subdivision 4, of the New York Code of Criminal Procedure, as amended in 1958, provides that a peace officer such as Quale or Clohessy, New York Code of Criminal Procedure, § 154, may arrest without a warrant "When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it," even though it afterwards appears that no felony was committed or that the person arrested did not commit it. Assuming the reliability of the "special employee's" information, Clohessy and Quale had probable cause to believe that Robinson and Daniels had committed a felony in violation of New York law by possession of narcotics, Penal Law, § 1752, McKinney's Consol.Laws, c. 40, as well as the federal felony of concealing and facilitating the transportation and concealment of a narcotic drug, knowing the same to have been illegally imported, 21 U.S.C. §§ 173–174. When Robinson and Daniels admitted that they had just come from New York, this confirmation of the information which Giovino had relayed to them, and their own knowledge that Daniels was an addict, and that Robinson had a previous narcotics conviction, was sufficient to justify an arrest without a warrant. In People v. Jones, Gen.Sess., 232 N.Y.S.2d 18, 20 (1962) the officer could not tell whether what he saw the defendant selling or giving to others was actually narcotics, but the information which he had been given about the defendant, confirmed by what he saw, was held to constitute probable cause.[2] In view of the nature of the crime and the ease and speed with which evidence of it may be de-

---

1. The informer whose name was Hereford died four days after the arrest. 358 U.S. at 310, 79 S.Ct. at 331.

2. By a 1963 amendment to § 177 of the New York Code of Criminal Procedure, L.1963, c. 580, eff. July 1, 1963, a peace officer may now effect an arrest without a warrant where he "has reasonable grounds for believing that a crime is being committed in his presence." Clearly under such a standard Clohessy and Quale would have been justified in arresting Robinson and Daniels, in light of the information given them by Gavin, their own knowledge of the defendants' backgrounds, and the confirmation of Gavin's information arising from the circumstances in which the defendants were found. However, as already indicated, the arrest was equally justifiable under the more narrow provision of subdivision 4 of § 177, which was already in effect at the time of the arrest.

stroyed or secreted, there was every reason for the officers to make the arrest without delaying to secure a warrant. If despite all the information Quale and Clohessy possessed, they could not arrest it would probably not be possible ever to arrest for such an offense on the basis of information received principally from others.

The defendants also assert that the arrest was invalid because the officers did not follow the ritual prescribed by § 180 of the New York Code of Criminal Procedure, which provides that when arresting without a warrant "the officer must inform him [the arrested person] of the authority of the officer and the cause of the arrest, except when the person arrested is in the actual commission of a crime, * * * " Here the defendants knew that Clohessy and Quale were narcotics officers of the Buffalo police department. From their conversation with the officers when they were accosted they clearly realized that the officers were detaining them in the belief that they were concealing and transporting narcotics. When what is said and done makes clear why the arrest is being made there has been substantial compliance with the statute. The Court of Appeals has recently so held in the case of People v. Coffey, 12 N.Y.2d 443, 453, 240 N.Y.S.2d 721, 728, 191 N.E.2d 263 (1963), 9 N.Y.L. Forum 408 (1963), where the court found that from the circumstances surrounding their capture the defendants had sufficient notice of the reasons for it.

The appellants also urge that the arrest was invalid as the real purpose was to search the defendants to see whether they had narcotics. Our discussion above with respect to probable cause demonstrates that this objection is not well taken, if the trial judge should find, after disclosure of the special employee, that there was probable cause when the defendants were arrested.

Of course the fruits of the search cannot justify the arrest. Johnson v. United States, 333 U.S. 10, at 16–17, 68 S.Ct. 367, at 370, 92 L.Ed. 436 (1948). But it is equally true that the finding of heroin on Daniels' person does not prove that the purpose of detaining the defendants was merely to search them. Obviously in cases such as this what determines whether there is to be further prosecution is whether or not the defendants actually are carrying narcotics. The only way to secure sufficient proof was to search the persons of the defendants and their luggage to determine whether or not they had in fact committed and were committing a crime.

We have examined all other claims of error and find them to be without substance. While it would have been much better not to permit the prosecutor to bring out from the police witnesses how long they had known the defendants as that carried with it the implication of previous wrongdoing or the suspicion of it, we do not think that was prejudicial error here.

Accordingly, we vacate the judgment of the district court and remand the case for further hearing on the motion to suppress, which hearing should be confined to the identity of the special agent and his reliability as it relates to the issue of probable cause.

The district court should make findings of fact on these issues. If the district court finds, after the trial of such further issues, that there was probable cause, it shall enter a new final judgment based upon the record as supplemented by further testimony and findings, thereby preserving to the appellants their right to further appellate review.

On the other hand, if disclosure is not forthcoming, or if the court finds lack of probable cause, the indictment should be dismissed. See Costello v. United States, supra, 298 F.2d at 102.

The hearing should proceed with the least possible delay and we direct the immediate issuance of our mandate forthwith.

The case is remanded for further proceedings consistent with this opinion.