STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ROBERT LORAY, DEFENDANT-RESPONDENT.

Argued September 13, 1965—Decided December 20, 1965.

See also 87 *N. J. Super.* 119, 208 *A. 2d* 183.

*Mr. Brendan T. Byrne,* Essex County Prosecutor, argued the cause for appellant (*Mr. Philip R. Glucksman,* Assistant County Prosecutor, of counsel and on the brief).

*Mr. Arthur R. Schmauder* argued the cause for respondent.

The opinion of the court was delivered by

HALL, J. This appeal concerns a post-conviction attack on the referral of a juvenile complaint for adult criminal prosecution.

The defendant Robert Loray was implicated in the mugging of an aged pedestrian on a street in Newark on February 24, 1961. The victim died at the scene of the attack and robbery. At the time Loray was a juvenile, just over 16 years of age. The two others involved were Stanley Wilson, about three months older than Loray, and George Cooper, aged 19, and so beyond the juvenile classification. Loray and Wilson were charged with juvenile delinquency, by reason of the commission of assault, robbery and homicide, in a complaint filed in the Essex County Juvenile and Domestic Relations Court. *N. J. S.* 2A:4–14(1)(a). Following a hearing held on March 2, 1961, the judge of that court referred the matter to the prosecutor as to both youths to be dealt with as criminal cases under the authority of *N. J. S.* 2A:4–15.

Loray and Wilson were then indicted with Cooper for murder and robbery and counsel was appointed for each of them. All were convicted of murder in the first degree in the Essex County Court in May 1962. They were sentenced to life imprisonment in accordance with the jury's verdict. Loray alone appealed his conviction. We affirmed it. 41 *N. J.* 131 (1963).

No attack was made on the referral of the juvenile complaint until Loray's appeal. His brief then contended for the first time that the referral proceedings were a nullity, thereby infecting the criminal trial and calling for a reversal of the conviction and a remand to the juvenile court. The contention was grounded on counsel's assertions that Loray was not represented by counsel at the juvenile court hearing, was not advised of his right to counsel and was not afforded an opportunity to present evidence to challenge any authorized basis for referral or seeking to induce the court to retain the matter for final disposition. The only record then furnished us was the order of referral and the letter of transmittal thereof from the juvenile court judge to the prosecutor.

Neither indicated what had transpired at the hearing or, indeed, the basis for the referral. We declined to entertain the issue because of the absence of an adequate record and of any application for relief at the trial level. It was further noted that "we do not reach the question whether there may be an attack upon the order of referral after there has been a trial upon the indictment." 41 *N. J.*, at *p.* 143.

The present petition for post-conviction relief, again in Loray's behalf only, was filed in the criminal cause, *R. R.* 3 :10A–1 *et seq.*, by newly assigned counsel in 1964. Asserted not only was essentially the same challenge to the referral proceeding in the juvenile court, but also the claim that the conviction was invalid on further alleged constitutional grounds including unlawful arrest and detention and violation of rights in the taking of his inculpatory statement during the period of detention. It asked that the conviction be set aside, plus the entry of a judgment of acquittal or, in the alternative, that the defendant be afforded an adequate defense commencing with a proper juvenile court referral hearing.

At the hearing on the post-conviction petition in the county court, the referral hearing, which had not been taken down stenographically, was reconstructed by what amounted to a certificate of the juvenile court judge. Defendant's parents had been sent a notice by the court that a preliminary hearing would be held to determine whether the matter would be retained and disposed of there or referred to the prosecutor. The notice included a statement that "the family may engage legal counsel if it desires to do so." At the hearing, defendant's mother was present with him. They were informed of the purpose of the hearing. He was not represented by counsel nor advised of any right to be represented by counsel or to have counsel assigned if he were indigent. The complaint was read aloud and defendant's age confirmed by questioning his mother. The judge then explained that from the complaint itself he determined that the offense charged was of a heinous nature—a killing in the commission of a felony—and

that under the circumstances the matter should be referred to the prosecutor. The defendant was not informed that he could present evidence in his behalf nor was he given any opportunity to do so.

In the post-conviction proceeding the court concluded, as a matter of federal constitutional right "and as a matter of fundamental fairness," that the defendant was entitled to be represented by counsel at the referral hearing and that he should have been specifically informed of that right and further told the court would appoint counsel if he were indigent. The Fourteenth Amendment due process right so found was grounded in analogy to the holdings in *Hamilton v. State of Alabama*, 368 *U. S.* 52, 82 *S. Ct.* 157, 7 *L. Ed. 2d* 114 (1961), *Gideon v. Wainwright*, 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed. 2d* 799 (1963), and *White v. State of Maryland*, 373 *U. S.* 59, 83 *S. Ct.* 1050, 10 *L. Ed. 2d* 193 (1963) (see also *Pointer v. State of Texas*, 380 *U. S.* 400, 85 *S. Ct.* 1065, 13 *L. Ed. 2d* 923 (1965), decided since), the referral hearing being characterized as "a critical stage of the proceedings" because of the greater penalties that could be imposed in the adult court for felony murder. The court also held that the question could be first raised by an application for post-conviction relief since it affected "the fundamental fairness" of the proceedings and had not been "litigated in fact on appeal" from the conviction.

A remand of the case to the juvenile court for a properly conducted referral proceeding was ordered. The conviction was also vacated on the thesis that "[c]oncepts of fundamental fairness require that the defendant be afforded a hearing before the juvenile court free of the pressure of an existing conviction." The practical effect is that if, at the directed referral hearing, the juvenile court again decides to refer for criminal prosecution, the defendant will have to be retried on the issue of guilt and punishment.

The matter reaches us on the State's appeal from the post-conviction judgment. *R. R.* 1:2–1(c). While not acquiescing in the determination of invalidity of the referral

hearing or in the conclusion that the issue can be first raised in a proceeding for post-conviction relief, the State challenges only that portion of the judgment which vacated the conviction.[1]

■ Whether the court considered the setting aside of the conviction to be required as a matter of federal due process is not completely clear. Its expression can be so read and defendant urges the correctness of the result on that approach. As so read, the conclusion is called for by reason of error of constitutional dimensions in the preliminary proceeding— deprivation of representation by counsel at the referral hearing which, as we have said, the court found to be of that stature and, as defendant further contends here, lack of an opportunity to be heard in the juvenile tribunal in opposition to referral. Even assuming preliminary error of such fundamental proportions, we think it is now soundly settled that the setting aside of a conviction, as distinct from a limited remand, is not thereby required for due process reasons.

The rationale of *Jackson v. Denno*, 378 *U. S.* 368, 84 *S. Ct.* 1774, 12 *L. Ed. 2d* 908 (1964), and its progeny in this area seems clearly applicable. In *Jackson,* arising on federal *habeas corpus* attacking the validity of a state court conviction for murder, the court found that the state trial procedure to determine the voluntariness of a confession, and so its admissibility, pursuant to the so-called New York rule (see *State v. (Clarence) Smith,* 32 *N. J.* 501, 545–546, 557–560 (1960), *cert.* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed. 2d* 367 (1961)), fell short of an adequate measure of protection of the defendant's constitutional right against use of an involuntary confession and consequently was violative of due process.

---

[1] Hearing and determination on the other contentions advanced in the post-conviction relief petition were deferred. We have previously disapproved such piecemeal consideration and disposition. *State v. Jenkins*, 32 *N. J.* 109, 117 (1960). Should any of these contentions prove meritorious and require reversal of the conviction on that account, the precise issue put to us on the present appeal would become moot.

The court went on to hold that the error did not initially compel a complete new trial, and thus present vacation of the conviction, but could be overcome simply by a proper evidentiary hearing before the state trial court to determine whether the confession was admissible under proper procedural and substantive standards. If admissibility were found at such a hearing, the conviction would stand; if not, it would then fall with a new trial required at which the confession must be excluded. Mr. Justice White, speaking for the majority, dealt with the question in this language:

"It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence. Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. * * * Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that Jackson's confession was involuntary, there must be a new trial on guilt or innocence without the confession's being admitted in evidence.

Obviously, the State is free to give Jackson a new trial if it so chooses, but for us to impose this requirement before the outcome of the new hearing on voluntariness is known would not comport with the interests of sound judicial administration and the proper relationship between federal and state courts. * * * But as to Jackson, who has already been convicted and now seeks collateral relief, we cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly determined to be voluntary." (378 *U. S.*, at *pp.* 394–396, 84 *S. Ct.*, at *pp.* 1790, 1791, 12 *L. Ed.* 2d, at *pp.* 925–927)

The same course was directed in a later similar situation, *Boles v. Stevenson*, 379 *U. S.* 43, 85 *S. Ct.* 174, 13 *L. Ed.* 2d 109 (1964), also arising on federal *habeas corpus* attacking a state court murder conviction, where it could not be determined from the trial record whether the judge had decided

voluntariness of an admitted confession one way or the other and if he had, what standard was applied. And in *Henry v. State of Mississippi,* 379 *U. S.* 443, 85 *S. Ct.* 564, 13 *L. Ed. 2d* 408 (1965), like disposition was ordered on direct review of a state court conviction by *certiorari.* There the issue, also a constitutional one, was whether the defendant had waived his right, under the state's procedure, to object to the admissibility of evidence allegedly obtained by illegal search and seizure. The court remanded for a hearing in the trial court thereon. While literally and technically it ordered vacation of the judgment of conviction in conjunction with the remand, 379 *U. S.,* at *p.* 446, 85 *S. Ct.,* at *p.* 566, 13 *L. Ed. 2d,* at *pp.* 412, 416, a complete new trial was not directed and the language of Mr. Justice Brennan clearly indicates the court was actually only "suspending the determination of the validity of the conviction pending the outcome of the hearing." 379 *U. S.,* at *p.* 452, 85 *S. Ct.,* at *p.* 570, 13 *L. Ed. 2d,* at *p.* 415. This is made further evident by his statement that the procedure directed was similar to that adopted in the previous cases we have referred to, in service of the cause, among others, of "efficient administration of criminal justice." 379 *U. S.,* at *p.* 452, 85 *S. Ct.,* at *p.* 570, 13 *L. Ed. 2d,* at *p.* 416. In contrast, the trial court in the instant case was of the specific view that deprivation of a constitutional right in the juvenile court could only be corrected by wiping the slate entirely clean and starting over again at that level. We ought also to say that neither can we agree with the judge's alternative suggestion that the *Jackson v. Denno* remand procedure was not appropriate here because what he considered to be the more fundamental question of representation by counsel "at a critical stage of the proceedings" is involved. It does not seem to us that such a defect, even if it be of that stature, is more basic, constitutionally, in this context than an invalid method for determination of the voluntariness of a confession.

It may well be noted too that this court on several occasions before *Jackson v. Denno* had followed the practice of directing a remand for a hearing before the trial court on a preliminary

constitutional issue, where a direct appeal from the conviction was pending before us, without vacating the conviction or ordering a complete new trial. *State v. Scrotsky,* 38 *N. J.* 14 (1962) (legality of search and seizure), conviction reversed on return of remand, 39 *N. J.* 410 (1963); *State v. LaPierre,* 39 *N. J.* 156 (1963) (voluntariness of confessions; convictions affirmed), *cert.* denied 374 *U. S.* 852, 83 *S. Ct.* 1920, 10 *L. Ed.* 2d 1073 (1963); *State v. Doyle,* 40 *N. J.* 320 (1963) (legality of search and seizure), convictions affirmed on return of remand, 42 *N. J.* 334 (1964). The same course was pursued in a case decided a few days after *Jackson,* but without mention of that decision. *State v. Hutchins,* 43 *N. J.* 85 (1964) (legality of search and seizure), Appellate Division reversed and convictions affirmed on return of remand, 44 *N. J.* 49 (1965). Illinois had adopted the same procedure before *Jackson, People v. Wright,* 30 *Ill.* 2d 519, 198 *N. E.* 2d 316, 323 (*Sup. Ct.* 1964), appeal dismissed and *cert.* denied 379 *U. S.* 11, 85 *S. Ct.* 133, 13 *L. Ed.* 2d 24 (1964), and subsequently found it sanctioned by that decision, *People v. Beattie,* 31 *Ill.* 2d 257, 201 *N. E.* 2d 396, 399 (*Sup. Ct.* 1964). An identical practice was ordered utilized in New York after *Jackson* for confession cases concluded prior to it, *People v. Huntley,* 15 *N. Y.* 2d 72, 255 *N. Y. S.* 2d 838, 204 *N. E.* 2d 179, 182 (*Ct. App.* 1965), following the same course in use long before in other situations, *People v. Coffey,* 11 *N. Y.* 2d 142, 227 *N. Y. S.* 2d 412, 182 *N. E.* 2d 92, 95 (*Ct. App.* 1962). Appellate courts in the federal system have utilized the same technique. See, *e.g., United States v. Robinson,* 325 *F.* 2d 391, 395 (2 *Cir.* 1963), conviction affirmed 354 *F.* 2d 109 (Nov. 22, 1965).

█ We further are convinced that it may not be soundly urged that remand for further hearing and findings on a subsidiary issue, without wiping out the conviction and requiring a complete new trial, is in itself an unconstitutional procedure regardless of whether the remanded issue is of constitutional dimensions. The errors as to which such remands were ordered in *United States v. Shotwell Manufacturing Co.,* 355

*U. S.* 233, 78 *S. Ct.* 245, 2 *L. Ed. 2d* 234 (1957), and *Campbell v. United States,* 365 *U. S.* 85, 98–99, 81 *S. Ct.* 421, 5 *L. Ed. 2d* 428, 438–439 (1961), relied upon, along with *Jackson* and *Boles,* as precedent in *Henry,* were of non-constitutional character. Mr. Justice Black in his dissenting opinion in *Shotwell* contended that the directed remand at least violated the spirit of the protection against double jeopardy and that nothing less than vacation of the conviction and a full new trial were constitutionally proper. 355 *U. S.,* at *p.* 246, 78 *S. Ct.,* at *p.* 253, 2 *L. Ed. 2d,* at *p.* 243. He took the same position in his dissents in *Jackson,* 378 *U. S.,* at *p.* 409, 84 *S. Ct.,* at *p.* 1798, 12 *L. Ed. 2d,* at *p.* 935, *Boles,* 379 *U. S.,* at *p.* 45, 85 *S. Ct.,* at *p.* 176, 13 *L. Ed. 2d,* at *p.* 111, and *Henry,* 379 *U. S.,* at *p.* 454, 85 *S. Ct.,* at *p.* 571, 13 *L. Ed. 2d,* at *p.* 417. The failure of this viewpoint to command a majority[2] appears to us to settle the question.

The trial judge's conclusions under review may also be read to say, at least alternatively, that complete vacation of the conviction is dictated for a non-constitutional reason. Defendant also urges that position. We refer to the court's expression that fairness required the new referral hearing to be free of the presence of an existing conviction, which we take to mean that the juvenile court judge might not be able to consider retention of the case for juvenile disposition with sufficient objectivity if such a determination would necessitate upsetting the prior jury finding of guilt and the affirmance thereof by this court. Essentially the same point was made by the defendants in *State v. LaPierre, supra* (39 *N. J.* 156), in urging that this court should not have, while the appeal was pending before us, remanded to the trial judge for clarification and further findings on the voluntariness of the confessions. It was suggested that the procedure was "unfair and

---

[2] Chief Justice Warren and Mr. Justice Douglas joined in the *Shotwell* dissent only. Mr. Justice Clark would reach the same result in *Jackson,* according to his separate dissent. 378 *U. S.,* at *p.* 426, 84 *S. Ct.,* at *p.* 1806, 12 *L. Ed. 2d,* at *p.* 944. Mr. Justice Black was the sole dissenter in *Boles* and dissented alone on this question in *Henry.*

indeed a denial of due process of law" "because not every judge can be expected to certify his own error." The contention was replied to in language which serves as well to demonstrate that this thesis furnishes no support for the trial court's conclusion in the instant case:

"But the answer is that we must assume that every judge can and will, that he places truth above pride, and will shun the burden of conscious wrong. The judicial process depends upon that faith." (39 *N. J.*, at *p.* 164)

Since vacation of the conviction in connection with the remand is not required under any thesis, and since efficient judicial administration dictates that it should not be directed, we conclude that the trial court erred in so directing and that its order must be modified by deleting that provision therefrom.

We should add that we do not wish to be understood by what has been said as expressing any opinion on the trial court's basic holding that a juvenile court referral hearing is "a critical stage" of a criminal prosecution, so as to make representation by counsel at that point a matter of constitutional proportions, under the recent United States Supreme Court decisions previously cited. It was said in *State v. Tuddles*, 38 *N. J.* 565, 577 (1962), and *State v. LaPierre, supra* (39 *N. J.*, at *p.* 180), both decided after *Hamilton*, 368 *U. S.* 52, 82 *S. Ct.* 157, 7 *L. Ed.* 2d 114, but before *Gideon*, · 372 *U. S.* 335, 82 *S. Ct.* 792, 9 *L. Ed.* 2d 799, and *White*, 373 *U. S.* 59, 83 *S. Ct.* 1050, 10 *L. Ed.* 2d 193, that there is no constitutional right to assignment of counsel at a referral hearing. This conclusion essentially derived from the nature, purpose and incidents of our referral procedure under *N. J. S.* 2A:4–15 first spelled out in *State v. Van Buren*, 29 *N. J.* 548 (1959), and further developed and commented upon in *Tuddles* and *LaPierre*. See also *In re State in Interest of Steenback*, 34 *N .J.* 89 (1961), and *Goodlet v. Goodman*, 34 *N. J.* 358 (1961), *cert.* denied 368 *U. S.* 855, 82 *S. Ct.* 92, 7 *L. Ed.* 2d 52 (1961). *Tuddles* did hold, however, that counsel

should be assigned on behalf of the juvenile in a referral proceeding "to assist the court in arriving at a decision so meaningful to the juvenile and society" and to represent the juvenile in advancing such relevant facts as he may wish in his effort to persuade the court to retain jurisdiction. 38 *N. J.*, at *p.* 577. Our rules of procedure were subsequently amended to provide that if a juvenile is unable to secure counsel to represent him at a referral hearing, "the court shall notify the Assignment Judge who shall specially assign counsel to represent him." *R. R.* 6:9–1(b), as amended effective January 2, 1963.[3] Any constitutional question has consequently become academic in this State with respect to referral proceedings conducted since *Tuddles.*

█ Since the State does not raise the point, we are still not called upon to decide whether a referral order may be attacked after the trial upon the subsequent indictment, an issue which it will be recalled was not reached in our opinion affirming defendant's conviction. 41 *N. J.*, at *p.* 143. *Cf. Goodlet v. Goodman, supra* (34 *N. J.* 358). Perhaps we should comment, however, that while here defendant did challenge the referral proceeding, albeit improperly, before the conviction became final, by argument in his brief in this court on his appeal therefrom, he could have made an appropriate attack long before. This referral hearing was defective under our decision in *Van Buren* (29 *N. J.*, at *p.* 558) in that defendant was not informed of his right to or given any opportunity to "advance such relevant facts (apart from the issue of guilt) as he may wish to place before [the juvenile court]."

█ Even where the charge amounts to murder and the heinous nature of the offense thus appears on the face, this

---

[3] While *R. R.* 6:9–1(b) applies, strictly speaking, only to cases "[w]here the juvenile is charged with causing the death of a person * * *," counsel should be assigned as well to serve in referral proceedings involving other charges pursuant to the general direction in *R. R.* 6:9–1(a) for the assignment of counsel in all juvenile causes "where necessary for a fair hearing * * *."

is not enough in itself to justify referral, for the statute, *N. J. S.* 2A:4–15, further requires a determination that the "circumstances * * * may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society." In this connection, the court, of course, might very properly conclude in a given case, despite everything presented by the juvenile, that, as we said in *Van Buren*, society would be better served by the criminal process with respect to the type of offense involved "by reason of the greater security which may be achieved or the deterring effect which that process is thought to accomplish." 29 *N. J.*, at *p.* 557.

Although *Tuddles*, with its holding of the necessity for counsel and also of the right to challenge and reopen the referral hearing after indictment (but before trial in that case), was not decided until after Loray's conviction, *Van Buren*, which was an appeal from a referral order after indictment, had been on the books for almost three years prior to the order in the instant case. Loray was indicted a few days after the referral and counsel was assigned him in the criminal court shortly following, who could then have raised the validity of the referral proceeding by a timely appeal.

The remand order is modified.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*Opposed*—None.