STATE OF CONNECTICUT *v.* ANN JACKSON

CIRCUIT COURT
SIXTH CIRCUIT
FILE No. CR 6-38087

Memorandum filed March 3, 1966

*Alvin M. Murray,* assistant prosecuting attorney, for the plaintiff (state).

*Richard L. Jacobs,* of New Haven, for the defendant.

JACOBS, J. The defendant is charged in a two-count information with a violation of § 30-77 of the General Statutes. More specifically, she is charged with (1) the sale of alcoholic liquor without a permit,

and (2) owning and keeping alcoholic liquor with intent to sell—all in violation of the Liquor Control Act. The offense with which she is charged is a misdemeanor. General Statutes §§ 30-113, 1-1.

On February 16, 1966, the court held a hearing on the defendant's motion to suppress the evidence, in obedience to § 54-33f. The defendant has alleged in the motion the statutory grounds for the suppression of the evidence, to wit: (1) the property was seized without a warrant; (2) the complaint and warrant under § 30-107 are insufficient on their face; (3) there was not probable cause for believing the existence of the grounds on which the warrant was issued; (4) the warrant was illegally executed; and (5) the warrant was not returned with reasonable promptness.

The hearing on the motion developed a factual background which may be summarized as follows: Detective Stanley Barakis has been associated with the New Haven police department for the past fifteen years, during the last three of which he has been, and he still is, assigned to the special service division of the department. On January 23, 1966, at or about 1:30 a.m., he received information from an informant that the defendant "was selling alcoholic beverages in her apartment at No. 128 Asylum Street" in the city of New Haven. Thereupon, Detective Barakis and his fellow officers gave the informant United States currency and instructed him to go to the defendant's apartment to ascertain whether she would sell him a bottle of alcoholic liquor. The informant was at all times under the personal observation of Detective Barakis. He saw the informant enter the premises. Detective Barakis was some fifty feet away from the informant. Within a matter of about five minutes, the informant came out of the defendant's apartment.

He had purchased a half-pint of Gordon's dry gin from the defendant, for which he paid her $2.25. At about 2 a.m., on the aforesaid date, or within less than half an hour of the receipt of the information, Detective Barakis knocked on the door of the defendant's apartment, which is located on the second floor of No. 128 Asylum Street, identified himself as a police officer and placed the defendant under arrest for a violation of the Liquor Control Act. The court finds as a fact that the defendant was made fully aware that Detective Barakis was a police officer and the purpose of the entry into her apartment. She denied having alcoholic liquor in the premises. Detective Barakis then asked of her: "Do you mind if I look around?" She replied: "Go ahead," whereupon a search was made for alcoholic liquor. The search uncovered forty-nine one-half pints of alcoholic liquor concealed in the defendant's washing machine. The defendant was taken to headquarters, where she was booked on the foregoing charges. The officers seized the liquor.

At the outset, we point out that the search here was not a "general" or "exploratory" search, without any specific objective in mind but in the hope that evidence of crime might be found. General or exploratory searches are universally condemned as unreasonable and therefore violative of the fourth amendment, even though incidental to a lawful arrest. See *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344; *United States* v. *Lefkowitz,* 285 U.S. 452; *Kremen* v. *United States,* 353 U.S. 346; *United States* v. *Kirschenblatt,* 16 F.2d 202; *People* v. *Loria,* 10 N.Y.2d 368.

Section 30-107 authorizes any "police officer, acting within his . . . city . . . , without a warrant, [to] arrest any person whom he finds in the act of illegally . . . selling alcoholic liquor, and seize the

liquor." It cannot be said that the evidence supports a finding that Detective Barakis actually saw the defendant in the act of illegally selling alcoholic liquor. Therefore, the court must conclude that § 30-107 can have no application here.

It remains to be considered whether the police officer was justified in making the arrest without a warrant "on the speedy information of others." See § 6-49. In *State* v. *Wilson,* 153 Conn. 39, the defendant was apprehended within a matter of hours by state and local police officers, and the Supreme Court sustained the arrest as coming within the provisions of § 6-49. In the present case, the arrest was made within half an hour of the time Detective Barakis received the information. Thus, if the arrest was lawful, a search incidental to it must stand.

In the case at bar, the arrest preceded the search. If, for example, the search had been made first, a presumption would arise that the primary purpose of the entry was to search rather than to arrest. See *Jones* v. *United States,* 357 U.S. 493; *Lee* v. *United States,* 232 F.2d 354; cf. *People* v. *Simon,* 45 Cal. 2d 645; *People* v. *Martines,* 228 Cal. App. 2d 245 (in California, apparently, the search may precede the arrest). Moreover, where the search is incident to the arrest, the search of the place must be reasonable. And what is reasonable, the Supreme Court of the United States has said, will depend upon the facts and circumstances of each case. See *United States* v. *Rabinowitz,* 339 U.S. 56. The general rule is that a search will only be held reasonable where the officers are searching for some specific item or group of items. *United States* v. *Rabinowitz,* supra, 62. Also, the Supreme Court of the United States has held that a search is unreasonable if it is too remote in time and place from the arrest. See *Preston* v. *United States,* 376 U.S. 364; cf. *Stoner* v. *California,* 376 U.S. 483 (search con-

ducted two days after the arrest, in a different state, could not be considered incident to a lawful arrest). A search incident to an arrest is limited to a search for (1) articles which may furnish the means of an escape; (2) contraband; (3) the fruits of the crime; (4) instruments or implements of the crime. The Supreme Court of the United States has repeatedly limited the articles which may be seized as an incident to an arrest to these four categories. See *Gouled* v. *United States,* 255 U.S. 298; *Agnello* v. *United States,* 269 U.S. 20, 30; *Harris* v. *United States,* 331 U.S. 145, 154; *Abel* v. *United States,* 362 U.S. 217.

Of course, not all arrests will justify an incidental search. The Supreme Court has said that "an arrest may not be used as a pretext to search for evidence." *United States* v. *Lefkowitz,* 285 U.S. 452, 467. So, in *Taglavore* v. *United States,* 291 F.2d 262, a vice squad inspector who suspected the defendant was connected with narcotics violations swore out a warrant for his arrest for a traffic violation committed in the inspector's presence. The court held that the entire arrest was invalid because the police deliberately tried to evade the requirements of the fourth amendment by using a traffic arrest warrant as an excuse for a search. See also *People* v. *Watkins,* 19 Ill. 2d 11 (defendant arrested for parking violation; a search of his car revealed policy slips; search was unjustified); *Henderson* v. *United States,* 12 F.2d 528, 531 (search and not the arrest was the real object of the entry into the premises; search was unreasonable); *Worthington* v. *United States,* 166 F.2d 557 (arrest made as a pretext to search for evidence; evidence suppressed); *United States* v. *Tate,* 209 F. Sup. 762 (defendant arrested by state trooper for speeding; he was handcuffed in trooper's car while trooper searched his automobile and found a sawed-off shotgun; search and seizure

were illegal; conviction set aside); *State* v. *Michaels,* 60 Wash. 2d 638 (defendant arrested for failing to signal before making a left-hand turn; search revealed illegal gambling devices; arrest was not for signaling but was a mere pretext for the search of the car).

Applying the foregoing principles of law relating to a search without a warrant as an incident to a lawful arrest, we find none of the infirmities present in the case at bar so as to invalidate the search. Here, as was pointed out, the arrest preceded the search. The search was made for specific items (alcoholic liquors). The arrest was made on speedy information. The search was specific, not general or exploratory. The arrest was not used as a mere pretext to effectuate the search. These factual determinations are undisputed. They must, therefore, stand.

Finally, the defendant insists both on oral argument and in her brief that the state must, in a case of this kind, disclose the identity of the informer. There are ample and forceful reasons for the prosecutor's desire to keep the identity of the informer a secret. In his dissenting opinion in *People* v. *Durazo,* 52 Cal. 2d 354, 358, a narcotics case, Mr. Justice Shenk stated: "By the very nature of the crime the use of informers plays a major role in the apprehension of narcotics violators. . . . Obviously it becomes impossible to solicit the assistance of informers where their identity is required to be revealed and they are thus exposed to retaliation on the part of narcotics violators. The hazardous position of the informer is dramatically called to our attention in [citing case], . . . where it was held that inadequate protection had been furnished to an informer who was set upon and murdered. . . . It is apparent that the need to protect an informer's

name, and his life as well, is a factor to be given considerable weight in the balance in determining whether the state must reveal the source of its information." See also *Harrington* v. *State*, 110 So. 2d 495, 497 (Fla. App.), advancing further reasons for withholding the identity of the informer.

But while the reasons for nondisclosure are strong, they are not absolute. The public interest in nondisclosure must be balanced against the right of the defendant adequately to prepare his defense. See *Roviaro* v. *United States*, 353 U.S. 53; *United States* v. *Robinson*, 325 F.2d 391; *People* v. *Williams*, 51 Cal. 2d 355; *Priestly* v. *Superior Court*, 50 Cal. 2d 812. The Supreme Court of the United States has said that fixed rules for determining when disclosure must be made are not appropriate and that the determination must depend upon the circumstances of each case. One cogent argument for disclosure bears on the issue of probable cause, which must be heard by an impartial judge. Unless the judge hears the testimony as to the reliability of the informer, he cannot properly make that determination. Instead, the reliability of the informer, and the existence of probable cause, will be ultimately determined by the arresting officer.

The precise issue of disclosure when the arrest is made without a warrant has not yet been decided by the Supreme Court of the United States. The decisions of the lower federal courts are in conflict. See *Newcomb* v. *United States*, 327 F.2d 649 (9th Cir.), cert. denied, 377 U.S. 944 (disclosure not required); *United States* v. *Robinson*, 325 F.2d 391 (2d Cir.) (disclosure required). The California rule is set out in *Priestly* v. *Superior Court*, 50 Cal. 2d 812. In an opinion by Mr. Justice Traynor, the court ruled that if the information given to the police by the informer is necessary to establish

probable cause for the arrest without a warrant, the identity of the informer must be revealed in order to allow the defendant a fair opportunity to rebut the officer's testimony on the issue of probable cause. But in *People* v. *Prewitt,* 52 Cal. 2d 330, a nonwarrant case, the officer received an anonymous telephone call from an informer and recognized his voice as that of one who had, on two previous occasions, given information leading to arrests. The order of the Superior Court setting aside the indictment was reversed, the Supreme Court holding that probable cause had been established, even though the informer could not be identified by name. Proven accuracy in the past justified reliance on the informer in this case. Thus the court held that the identity of the informer was not essential to a fair trial.

The question which the court must decide in the case at bar is whether reliability of the informer has been sufficiently established without disclosure of his identity. The court is of the opinion that the requirement of reliability has been met. Detective Barakis testified that this informer has "given me information which has resulted in arrests and convictions [in] several liquor cases" in the past. These arrests led to convictions. And it was from the informer's own personal knowledge that Detective Barakis learned of sales of liquor by this defendant. The court recognizes that this question has not been thoroughly treated in the federal cases. Apparently, however, the requirement of reliability is met by a conclusional statement that the informer is believed to be reliable on the basis of information given in the past which proved to be accurate. See *Jones* v. *United States,* 362 U.S. 257; *Rugendorf* v. *United States,* 376 U.S. 528. Moreover, even in *Priestly* v. *Superior Court,* 50 Cal. 2d 812, the court did not go so far as to say that disclosure in a nonwarrant

case was constitutionally required. Rather, the issue of reliability, under the particular circumstances of the case, is left for the court to decide on a weighing and balancing of conflicting interests.

Disclosure of the identity of the informer in this case is not required.

For the reasons set forth herein, the motion to suppress the evidence must be, and the same is hereby, denied.