**UNITED STATES of America,**

v.

**Amado Duran CAMPOS.**

**No. 65 Cr. 786.**

United States District Court
S. D. New York.

April 7, 1966.

854

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, by Roger J. Hawke, Asst. U. S. Atty., for United States.

Stone & Diller, by Joseph I. Stone, New York City, for defendant.

## OPINION

TYLER, District Judge.

Amado Duran Campos, who was arrested as an alleged narcotics violator on August 2, 1965, moves pursuant to Fed. R.Cr.P. 41(e) to suppress certain evidence obtained from a suitcase he was carrying immediately upon his arrest. Hearings were held on this motion on November 17, November 22 and November 30, 1965. On the basis of the testimony adduced and documents submitted at those proceedings, it is determined that the motion should be, and hereby is, denied.

At the outset, it is incumbent upon me to resolve the direct conflict in the testimony of Federal Narcotics Bureau agent Francis J. Farrell and the testimony of the alleged informer, Jorge Gonzalez, concerning certain dealings between the two up to and including August 2, 1965. Upon resolution of this issue, the question of whether the reasonable grounds ordinarily required for making a valid, warrantless arrest and search incidental thereto were present in this case may then be considered and decided.

On November 17, 1965, Farrell, one of three agents who had arrested Campos, testified that for approximately a year prior to July 29, 1965 he had had frequent dealings with one Jorge Gonzalez who was acting as an informer for the Bureau under his direction. Prior to July 29, 1965, Gonzalez had furnished Farrell information concerning narcotics violations which Farrell himself had verified and which had ultimately led to various arrests and prosecutions in the state and federal courts. Further, investigations currently were being conducted as a direct result of Gonzalez' information. Consequently, at least prior to July 29, 1965, Farrell was of the impression that Gonzalez was a reliable informer.

On July 29 and July 31, Farrell met Gonzalez in the area of 96th Street and West End Avenue, New York City, for the purpose of negotiating a sale between the defendant, whom Gonzalez had described to Farrell as being in possession of a large quantity of marijuana, and an undercover agent who would be introduced to Campos by Gonzalez. This initial stratagem was dashed when it was discovered that the agents could not then acquire the necessary funds to consummate an illicit sale.

In the early evening of August 2, 1965, however, Farrell again met Gonzalez who stated that the defendant still retained an appreciable amount of marijuana in his possession and that he could probably be located in the general vicinity of 136th Street and Broadway near the Oceanview Bar. Thereafter, the informant entered an automobile and drove to 136th Street and Broadway followed by Farrell in an automobile driven by Federal Narcotics Bureau agent Jack Gohde.

Upon arriving at 136th Street and Broadway, the agents observed the informant to enter his automobile and drive away. Closely followed by the

agents, Gonzalez drove to 134th Street and Riverside Drive where he parked his vehicle and remained seated. Farrell, leaving the government vehicle, approached Gonzalez on foot. Farrell was told by Gonzalez that Campos had revealed to him that he, Campos, had a purchaser for the ten or twelve pounds of marijuana remaining in his possession. For Farrell's benefit, Gonzalez described Campos as being a male Cuban in his mid-thirties, approximately 5'8" in height and weighing approximately 160 pounds. Further, he said, Campos would be wearing a light colored Panama straw hat, a light blue short sleeve sport shirt, dark trousers and a large amount of jewelry, including several rings, an identification bracelet and a large medallion attached to a chain hanging around his neck. Finally, Campos could then be found in the general area of 136th Street and Broadway near the Oceanview Bar.

From 134th Street and Riverside Drive, Farrell and Gohde drove to the specified vicinity and parked their vehicle in an advantageous position for viewing the activities of 136th Street and Broadway. While seated in the vehicle, the agents spotted a man who precisely fitted the detailed description given to Farrell by Gonzalez. This man, as later events were to establish, was the defendant Campos.

The agents maintained their surveillance of Campos for several hours until they saw him enter a taxi at approximately 11:30 p. m. and proceed south on Broadway to 111th Street. Here Campos exited from the cab and entered a telephone booth on the corner of 111th Street and Broadway. After a short period of time, Campos left the telephone booth, walked across the street and entered an apartment house. At this point Farrell, Gohde and Klempner (another agent who originally had been following Campos on foot in the neighborhood of 136th Street and Broadway and had followed him to 111th Street in his own government vehicle) positioned themselves around the apartment house and maintained a sur-

veillance of the building. Shortly, the defendant exited from the apartment house carrying a large suitcase. At this point the three agents converged on Campos and placed him under arrest. An immediate search of his person by Farrell failed to uncover any narcotics. Immediately, Campos was taken by Farrell and Gohde into the rear lobby of the apartment house from whence he had emerged; there the suitcase which he was carrying was searched by Gohde. This search revealed the several packages of marijuana which comprise the subject matter of this motion.

On November 30, 1956, Gonzalez took the stand and told a completely different tale. Gonzalez' testimony can be summarized in the following manner. He had initially met Agent Farrell in June or July, 1965. Their dealings consisted essentially of several telephone calls from Farrell to Gonzalez in which the agent had asked him for some information concerning possible narcotics violations. Gonzalez denied, however, that he had ever seen Campos until that day (November 30) and that he had ever described the defendant to Agent Farrell. Finally, Gonzalez disclaimed recollection of where he was on August 2, 1965.

Agent Farrell, recalled to the stand on November 30 after Gonzalez had completed his testimony, affirmed his earlier testimony of November 17.

Thus, the lines are starkly drawn. Farrell attests that on previous occasions he had had dealings with Gonzalez, finding him to be a reliable source of information, and that the informant had given the agents the information which led to the instant arrest. Gonzalez maintains that he never had been an informant for Farrell or for the Federal Bureau of Narcotics and that he gave Farrell no information concerning Campos.

■ Although no rubric can be laid down for determination of credibility, certain factors or considerations may guide the fact finder. Important among these is the right of a jury or judge, in

passing upon a witness' credibility, to consider from all that transpired at the hearing or trial a witness' interest, bias, or prejudice; his character, conduct or habits; his testimony in comparison with other evidence, oral or documentary; the appearance, manner and demeanor of the witness while testifying; his apparent frankness and intelligence; his capacity for consecutive narration of acts and events; the probability or improbability of the tale related by him; and the advantages he appears to have had for gaining accurate information on the subject. In short, as Judge Learned Hand once said in speaking for the court in Dyer v. MacDougall, 201 F.2d 265, 269, 2 Cir. 1952, "[t]he words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that the [trier of the facts] is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness."

In this light of the matter, it is my determination that the credible tale was told by Agent Farrell. His testimony seems the more reasonable, the more convincing and the more satisfying to the mind. Evaluating the testimony of Gonzalez, as one court instructs, "in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence", Carbo v. United States, 314 F.2d 718, 749, 9 Cir. 1963, it must be discounted insofar as it conflicts with Agent Farrell's testimony.

Accepting Farrell's testimony as credible, the question remains as to suppression or not of the contents of the valise or suitcase. The admissibility of such evidence will depend, of course, upon a finding that the search was legal which, in turn, will depend upon whether the arrest, made without a warrant, was legal. As will be more fully developed hereinafter, I conclude that the agents had reasonable grounds for making the arrest. Finding the arrest, although made without a warrant, lawful and the subsequent search of the defendant's person valid as made incidental to a lawful arrest, this motion to suppress the seized narcotics must be, and hereby is, denied.

■■■■ Narcotics agents have statutory authority to make felony arrests without a warrant for offenses committed in their presence, or where they have "reasonable grounds to believe that the person to be arrested has committed or is committing such violation", 26 U.S.C. § 7607. The statute merely reiterates the constitutional standard, for it is the command of the Fourth Amendment that no warrants for arrests or searches shall issue except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." See also Draper v. United States, 358 U.S. 307, 310 n. 3, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). What will constitute "reasonableness" or "probable cause" in a given case must depend upon its specific facts. United States v. Williams, 336 F.2d 183, 184, 2 Cir. 1964, cert. denied, 379 U.S. 857, 85 S.Ct. 54, 13 L.Ed.2d 36 (1964); United States v. Wai Lau, 329 F.2d 310, 311, 2 Cir. 1964. Evidence required to establish guilt will not be necessary. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Conversely, good faith on the part of the arresting officers will not be enough. Reasonable grounds will exist, it is said, if the facts and circumstances known to the officers would warrant a prudent man in believing that the offense has been committed. Strict enforcement of this constitutional standard protects both the officer and the citizen. If the officer acts with probable cause, he will be protected even though the citizen proves to be innocent. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925). On the other hand, the citizen is protected by the requirement that a warrantless search will be permissible only if the arrest is made with probable cause. *Carroll*, supra, at 155–156, 45 S.Ct. 280.

■■ It is clear that in every case the government has the burden of establishing that the probable cause requirement has been met, Wong Sun v. United States, 371 U.S. 471, 479–480, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Carroll v. United States, supra; United States v. Rivera, 321 F.2d 704, 708, 2 Cir. 1963; United States v. Dornblut, 261 F.2d 949, 2 Cir. 1958. The government, however, may not validate an initially invalid arrest by the fruits of the incidental search. The litmus paper of reasonableness must be applied when the arrest is made, and, unless it proves positive, the arrest will be illegal and its proceeds inadmissible. United States v. DiRe, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

To provide the "reasonable grounds" for the arrest here, the government necessarily relies upon the uncorroborated information of Jorge Gonzalez, an informer who, on August 2, 1965 at least, was considered to be reliable. Any argument that the agents' recognition and subsequent surveillance of the defendant provided corroboration, of course, would be an exercise in circular reasoning.

■ But the Supreme Court and the Court of Appeals for the Second Circuit have agreed with the government's position that the uncorroborated statement of a reliable informer can support a finding of reasonable grounds for an arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Salgado, 347 F.2d 216, 217, 2 Cir. 1965; United States v. Robinson, 325 F.2d 391, 394, 2 Cir. 1963; United States v. Garnes, 258 F.2d 530, 532, 2 Cir. 1958, cert. denied, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637 (1959). Accordingly, Gonzalez' information, especially when appraised in light of the lateness of the hour and the inherent danger of the removal or destruction of the merchandise involved in traffic of this kind, satisfied the reasonableness requirement and justified Campos' arrest without a warrant.

■ The propriety of a search of a person contemporaneous with or incidental to a lawful arrest to discover and seize evidence or proceeds of a crime long has been recognized in this country and in Great Britain. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Dillon v. O'Brien and Davis, 16 Cox.C.C. 245. More particularly, the search without a warrant will be sustained where it is made incidental to a lawful arrest and contemporaneous therewith as to time and place. Both conditions must be present. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280 (1925). The search must be truly incidental to the primary purpose for the arrest and may not be used as an excuse to search for evidence to justify the arrest, United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222 (1948), United States v. Robinson, 325 F.2d 391, 394–395, 2 Cir. 1963. If truly incidental to a lawful arrest, the search may extend to objects under immediate control of the suspect. *Preston*, supra, 376 U.S. at 367, 84 S.Ct. 881; *Carroll*, supra, 267 U.S. at 158, 45 S.Ct. 280.

■ In keeping with the foregoing principles, and probable cause for Campos' arrest having been found, it seems clear that the search and seizure of the suitcase were truly "incidental" as to time and place. The facts that the suitcase was not searched at the precise moment and exact location of Campos' arrest but rather was examined and seized in the public lobby of the apartment house within a few moments afterwards and a hundred feet or more away do not justify a contrary conclusion.

The motion is denied in all respects. It is so ordered.